BRAYMAN v. GRANT.

(Supreme Court, Appellate Division, Third Department. January 6, 1909.)

1. INSANE PERSONS (§ 49*)—COMMITMENT—NOTICE.

Under Insanity Law (Laws 1896, p. 492, c. 545), § 62, authorizing the judge issuing an order of commitment of an insane person to dispense with personal service of notice on stating his reasons for the same, a certificate dispensing with personal service, on the ground that it was such a pronounced case of insanity that notice was unnecessary and would only tend to excite the defendant and aggravate his trouble, was sufficient.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 49.*]

2. INSANE PERSONS (§ 49*) — COMMITMENT — NOTICE—CERTIFICATE DISPENSING WITH.

Insanity Law (Laws 1896, p. 492, c. 545), § 62, authorizes a judge to dispense with personal service on an insane person in making an order of commitment, and also provides that in making substituted service that the person shall be named on whom the service is to be made. A judge, in dispensing with personal service and giving his reasons therefor, made his certificate on a blank furnished by the lunacy commission, which, in order to meet the demands of the statute, was in the alternative, "I do hereby certify that I have dispensed with personal service, or that I have directed substituted service, as provided by law, upon the person hereinafter named." Held, that the failure to strike out the alternative as to substituted service was a clerical error, which did not render the process a nullity.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 49.*]

3. INSANE PERSONS (§ 49*)—COMMITMENT—PERSONAL SERVICE—STATUTES.

Insanity Law (Laws 1896, p. 492, c. 545), § 62, authorizing a judge in ordering the commitment of an insane person to dispense with personal service on giving his reason therefor, gave the absolute right to do away with service of process altogether, and did not merely shorten the time after which personal service should be made before the hearing.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 49.*]

4. INSANE PERSONS (§ 47*)—COMMITMENT—PERSONAL SERVICE—STATUTES.

This construction of the statute does not take away any of the constitutional rights of the insane person.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 47.*]

5. INSANE PERSONS (§ 49*)—COMMITMENT—EVIDENCE.

Insanity Law (Laws 1896, p. 492, c. 545), § 62 authorizes an overseer of the poor to apply for the commitment of an insane person on the certificate of two physicians that the lunatic is a proper subject for treatment. Sections 66 and 68 provide for the liability for the care and support of the insane, other than the poor and indigent, and require that it shall be shown that the lunatic is a dangerous man in the community. Held, that section 62 was not governed by sections 66 and 68 (pages 496,

498), as the latter provided for a different class of persons, and an order of commitment, made under section 62 without proof that the lunatic was dangerous, was sufficient.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 49.*]

6. INSANE PERSONS (§ 49*)—PRESUMPTIONS—JUDICIAL PROCEEDINGS.

*Held*, also in an action against the judge for false imprisonment of the lunatic, that it would be presumed that the lunatic had no other means with which to provide for his case, and that it was a proper one for the overseer to act, and hence the proceedings were properly brought under Insanity Law (Laws 1896, p. 492, c. 545), § 62.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 49.*]

7. WITNESSES (§ 266*) — EXAMINATION — CROSS-EXAMINING ONE'S OWN WITNESS.

It is not an abuse of discretion to refuse to allow plaintiff to ask of his own witness, after reading a long statement made by the witness in an affidavit, whether that statement was true; plaintiff not being entitled to cross-examine his own witness.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 266.*]

Appeal from Trial Term, Delaware County.

Action by Irving L. Brayman against John P. Grant for false imprisonment. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

On the 25th day of August, 1906, the plaintiff was committed to the State Hospital at Binghamton as an insane person by an order signed by John P. Grant, county judge of Delaware county. That order of commitment was made upon the certificate of two physicians in due form, which recited that the plaintiff was insane and a proper subject for custody and treatment in some institution for the insane as an insane person under the provisions of the statute. In the specific statement of facts made the patient was declared to be dangerous, excited, and somewhat depressed. Further facts were stated indicating his insanity, to wit: That the patient said he was being poisoned by wife, nurse, and others; that Masons were in conspiracy against him to assassinate him; that he would not go to any hospital without a bitter fight, and any doctor that committed him would better look out. The certificate stated: That he was excited, determined, and threatened, and further stated that the "family says he accuses them of poisoning him, that his wife is unfaithful to him, that his children are not his own. He has also struck his wife, and says that from now on she will get more." The petition was made by the overseer of the poor of the town of Walton. The plaintiff's wife was at that time living in the town of Walton. The county judge was at the time of making the order of commitment in the town of Walton. He signed a certificate dispensing with personal service, which was in form as follows: "I do hereby certify that I have dispensed with personal service, or that I have directed substituted service, as provided by law, upon the person hereinafter named for the following reasons: It is such a pronounced case of insanity that I deem it unnecessary to give notice, and notice would only tend to excite him and aggravate his trouble." About one year thereafter upon a writ of habeas corpus plaintiff was released from the asylum and brought this action against the said John P. Grant for false imprisonment. Upon the trial, at the close of plaintiff's evidence, the court dismissed the complaint. From the judgment entered upon such dismissal this appeal is taken.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Irving L. Brayman, in pro. per.
John P. Grant, in pro. per.

PER CURIAM.   This judgment is first challenged upon the ground that the county judge had no jurisdiction to grant the order of commitment, by reason of the failure of the service of notice either upon the plaintiff or upon his wife, who was residing within the same town. Section 62 of the Insanity Law (chapter 545, p. 492, Laws 1896) provides, in case of a petition by the overseer of the poor, that notice must be served both upon the person alleged to be insane and also upon the husband or wife, father or mother, or next of kin of such alleged insane person, if there be any such known residing within the county.   It is further provided, however, that this notice may be dispensed with by the judge who issues the order, and it only requires that he shall state his reason for dispensing with the personal service of such notice. There is nothing in the statute stating for what reason service may be dispensed with.   That seems to be left to the discretion of the magistrate.   In this case the county judge dispensed with personal service upon two grounds:   First, that plaintiff's insanity was so pronounced that it was unnecessary to give notice; and, second, that notice would only tend to excite him and aggravate his trouble.   Without specification in the statute of the ground upon which the magistrate may dispense with notice, we think that it cannot be said that he has failed to state sufficient reason within the discretion which seems to be given to him.

It is further contended that the certificate dispensing with service is in the alternative, and provides that the judge has dispensed with personal service or has directed substituted service upon the persons "hereafter named."   It is claimed that such a certificate is a nullity because in the alternative; but these certificates are required to be made upon the blanks furnished by the lunacy commission.   If substituted service is directed, the statute requires that the person shall be named upon whom such substituted service shall be made.   Inasmuch as no person is named upon whom substituted service is to be made, it is apparent that the form of the certificate was a clerical oversight on the part of the judge, and that he intended in fact to dispense wtih personal service, both upon the plaintiff and his wife.

But it is contended that the magistrate had no right to dispense with personal service, and that the provision of section 62 was intended to allow the magistrate only to shorten the time after such personal service should be made before the hearing, and that plaintiff's constitutional rights are evaded by ordering his commitment without his right to be heard before the court making the order.   But such has been the law in this state for many years.   It seems to arise from the necessity of the situation.   The right to commit without personal notice has never been held to take from an alleged insane person his constitutional rights, and to so hold would greatly embarrass the administration of this branch of the law and endanger the safety of the community.   See Matter of Walker, 57 App. Div. 1, 67 N. Y. Supp. 647.   We cannot agree therefore that the statute may not provide that personal notice

of the application may be wholly dispensed with without impairing the constitutional rights of the alleged lunatic.

Again, plaintiff contends that there is no finding here that he is a dangerous man in the community, as seems to be required by sections 66 and 68 of the insanity law. This commitment, however, was made under section 62 of the law. In that section there is no requirement that the alleged lunatic shall be found to be dangerous before the order can be made. The application is made by the overseer of the poor of the town in which he resides. It may be presumed that the alleged lunatic had not sufficient means with which to provide for his case, and that it was a proper case in which the overseer should act. Under section 62, all that is required to authorize the commitment is the certificate of two physicians that the alleged lunatic is a proper subject for treatment and care in a state hospital. Section 66 assumes to provide for a different class of persons—those who are of sufficient means to care for themselves, or who have relatives who are able and willing to maintain them. The heading of the section indicates that it provides for "liability for the care and support of the insane, other than the poor and indigent." Section 68 provides especially for the dangerously insane. While sections 66 and 68 may both overlap section 62, it is evident that they are not intended to add to the requirements of section 62 any further jurisdictional facts than are therein declared.

Error is further claimed in the refusal of the trial judge to allow the plaintiff to ask of his own witness, after reading a long statement made by the witness in an affidavit, whether that statement was true. The practice is well settled that one cannot cross-examine his own witness. If one having called a witness is surprised by his testimony, he may call his attention to inconsistent statements theretofore made by the witness, and ask him if his recollection is thereby refreshed. Even then the form of the question is largely in the discretion of the court. The statement read from the affidavit or verified answer contained a number of facts, and it was not an abuse of the discretion of the trial judge to refuse to allow attorney to ask the witness whether that statement was true. A further answer to this claim of error would seem to be that the matter claimed to be shown by the question was immaterial, and, if shown, could not affect the result.

We have carefully examined the record in this case and are led to believe the trial judge was right in dismissing the complaint.

Judgment should therefore be affirmed, with costs.