THE PEOPLE OF THE STATE OF NEW YORK ex rel. BERNARD BENSON, Respondent, *v.* CHARLES M. BURDICK, as Superintendent of DANNEMORA STATE HOSPITAL, Appellant.

Third Department, January 6, 1926.

Insane persons — habeas corpus to release relator from Dannemora State Hospital for Insane — county judge properly impaneled jury — verdict of jury approved by county judge that relator is sane is contrary to evidence.

In habeas corpus proceedings to inquire into the detention of the relator in Dannemora State Hospital for the Insane, the county judge had the right to impanel a jury to aid him in deciding the issue of sanity of the relator.

The verdict of the jury, which was approved by the county judge to the effect that the relator is sane, is contrary to the evidence, since it appears that while the examination and cross-examination of the relator did not disclose any evidence of insanity, the testimony by the first assistant physician of the hospital and by other physicians who are qualified alienists, clearly established that the relator is a paranoiac; and that the evidence so offered is based not only on the observation of the witnesses but also on the case book containing the record of the relator while in the hospital.

APPEAL by the defendant, Charles M. Burdick, as superintendent, etc., from an order of the County Court of the county of Clinton, entered in the office of the clerk of said county on the 19th day of June, 1925, discharging the relator from custody on the return to a writ of habeas corpus upon condition that the relator furnish the court a bond for $5,000 for his appearance at the next term of the Appellate Division of the Supreme Court, Third Department.

*Albert Ottinger, Attorney-General* [*George V. Fleckenstein* of counsel], for the appellant.

*Harry P. Kehoe,* for the respondent.

VAN KIRK, J. This is a habeas corpus proceeding to inquire whether or not the relator is legally detained in the Dannemora State Hospital. In January, 1913, the relator was convicted and sentenced to ten years confinement in Sing Sing prison. A short

time thereafter he was transferred, and regularly committed, to the Dannemora State Hospital for Insane Criminals. The question was whether or not the relator had regained his sanity. The county judge impaneled a jury to aid him in deciding the issue. In following this course the county judge was justified. (*People ex rel. Woodbury* v. *Hendrick,* 215 N. Y. 339.) The jury found that the relator was sane and this finding was adopted by the county judge. The appellant claims this finding is against the weight of evidence.

The relator was sworn and examined at length. So far as this record shows he answered the questions propounded to him intelligently, without hesitation and used good language; he was quiet, orderly and was not confused by a lengthy cross-examination. He was examined concerning the crimes for which he had been convicted, each of which was in the nature of larceny; he recited the history of his life in prison, gave an accurate account of proceedings which he had taken to procure his release and which had been uniformly denied, sometimes because his papers were incorrect and sometimes because the physicians ordered to examine him reported to the court that he was insane. In his testimony, as well as in his conduct, we discover no evidence of insanity. He was the only witness called in his own behalf. The People called two alienists and two physicians. Dr. Webster, the first assistant physician of Dannemora State Hospital, had observed Benson in the hospital since 1919. He had examined him at different times. He had also examined the hospital " case book " or " case record " containing Benson's record while confined there. He gives an account of the acts, behavior and talk of Benson upon which he bases his opinion that he is a paranoiac, that he is potentially dangerous if placed at large, and that it would not be for his own welfare or for the safety of society to give him his liberty. He says that Benson has delusions of a paranoiac nature, that he forms ideas, without reason, that people are persecuting him and discriminating against him, that he frequently bases those ideas upon falsification of knowledge and misrepresentation of facts. Dr. Burdick is the superintendent of Dannemora State Hospital. Since 1901 he has been continually in service in New York State hospitals for the insane and during the last three years at the Dannemora State Hospital. He had examined Benson and Benson has been under observation by him during the three years. He expressed the opinion that Benson is a paranoiac. Dr. Ryan is a qualified examiner in lunacy and has been practicing medicine in Plattsburgh since 1916. He had examined Benson about two years before at the request of the county judge. He came to the

conclusion that Benson was not sane.   He says he has examined forty or fifty insane persons.   He thinks the form of insanity from which Benson is suffering is paranoia.   Dr. W. S. Buck is practicing in Plattsburgh, qualified as an examiner in lunacy cases, and he, with Dr. Ryan, had examined Benson at the Dannemora State Hospital.   In his opinion Benson was insane.   The alienists defined paranoia and its symptoms.   A man suffering from paranoia may be quiet, have a good memory, converse freely, talk plausibly and behave quite normally; but it is a chronic mental disorder, progressive in character, from which there is seldom recovery. The principal symptom is the formation of ideas of persecution. One suffering from paranoia is liable, without warning, to commit violent acts upon others.   Dr. Burdick says:   " It is considered the most dangerous of mental disorders because of the liability that they possess of doing damage."

We have then this condition:  The jury has examined Benson; they have observed him and heard him answer questions during a lengthy examination and cross-examination. , They have expressed their opinion that he is sane and this opinion the county judge has approved.   No physician or alienist gave testimony on his behalf.   On the other hand, two qualified alienists and two physicians of some experience have examined and observed the relator and each has expressed the opinion that he is insane.   We have also the " case book " or " case record " of Benson, kept in the Dannemora State Hospital, which was used at the trial and which is a part of the record.   (Insanity Law, § 90, as amd. by Laws of 1924, chap. 550; Id. § 93, as amd. by Laws of 1913, chap. 542, and Laws of 1921, chap. 673.)   In but one entry in the record is there any conflict with the oral testimony of the alienists; it occurs in the report of Doctors Larkin and LaRocque in 1919, who, while finding Benson insane, express the opinion that he was not then likely to do injury to himself or to others.   Otherwise the entries in this book uniformly support the oral testimony given at this trial, that he is subject to delusions, entertains ideas of persecution without any foundation therefor, thinks every one is against him and some are plotting against him; that he is quite uniformly depressed, becomes quickly excited during conversations when his supposed wrongs are mentioned and has " many ideas of a paranoiac nature."   At the same time usually he is quiet, gets along without trouble and converses rationally.   Since he has been in the hospital County Judges HOGUE and COLLINS and Supreme Court Justices BORST, WHITMYER, ANGELL and McPHILLIPS have pronounced him insane.

Should then the opinions of laymen, based upon a few hours'

observation, be permitted in court to overcome the unanimous opinion of alienists, who have observed Benson for years and give the grounds on which they base their opinions; also to overcome the opinions of competent physicians, as well as the evidence in the hospital records of his case? Having in mind the definition of paranoia we realize that his appearance before the court and jury may have disclosed no evidence of a disturbed mental condition and yet he may have been at the time a paranoiac; while, unless we disregard entirely the testimony of the alienists and physicians and his hospital record, we should have to find that he is a paranoiac. In other words, in our view there is little if any conflict in the evidence; all that the court and jury saw and heard could exist and yet the medical testimony be entirely true and the medical opinions fully justified and undisputed.

The order should be reversed and Bernard Benson committed to the Dannemora State Hospital, a State institution for the custody of the insane.

All concur.

Order reversed on the facts, and Bernard Benson committed to the Dannemora State Hospital, a State institution for the custody of the insane.

The court disapproves of the finding that Benson is sane or has recovered his sanity.