THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHARLES ROMANO, Respondent, *v.* WALTER N. THAYER, JR., as Superintendent of the Institution for Defective Delinquents, Napanoch, N. Y., Appellant.

Third Department, May 16, 1930.

688

*Hamilton Ward, Attorney-General [John H. Machan, Deputy Assistant Attorney-General, of counsel], for the appellant.*

*Simeon T. Flanagan, for the respondent.*

HINMAN, Acting P. J.   This is an appeal from an order in habeas corpus discharging the relator from custody as an inmate of the Institution for Male Defective Delinquents at Napanoch, N. Y. In 1924, after indictment for the crime of burglary, third degree, and after a plea of guilty, the relator was examined by two qualified examiners and found to be a mental defective and was committed to Napanoch by the Court of General Sessions in New York county. About a year later he was released on parole.   In April, 1927, he was tried and convicted of the crime of unlawful entry and sentenced to a penitentiary.   Upon his release from the penitentiary in December, 1927, he was returned to Napanoch on a warrant from that institution as a parole violator.   He remained at Napanoch without further parole until October, 1929, when he was discharged therefrom by a Supreme Court justice in this habeas corpus proceeding on the ground that the relator was illegally detained and restrained of his liberty without an order of retention or recommitment and on the further ground that the relator is not now a mental defective.   The appeal is from that order.

Article 17 of the Correction Law (originally enacted as Prison Law and changed and amended generally by Laws of 1929, chap. 243) makes comprehensive provision for the commitment, care and custody of mental defective delinquents at this institution at Napanoch, N. Y., and for their parole and release therefrom. (Correction Law, §§ 430–447.)   Section 438 provides that a male

mental defective over sixteen years of age charged with, arraigned for or convicted of a criminal offense may be committed to this institution at Napanoch " upon a certificate of mental defect by two qualified examiners, or a qualified examiner and a qualified psychologist, made after an examination by them of the alleged mental defective." Sections 439 to 443, inclusive (formerly sections 24-c to 24-g of the Mental Deficiency Law, as added by Laws of 1921, chap. 483, and former Prison Law, §§ 469–473, as added by Laws of 1927, chap. 426), relate to prisoners transferred to the Napanoch institution from State prisons, reformatories and penitentiaries who have been confined therein and sentenced thereto for a felony, other than murder in the first degree, and after examination found to be mental defectives. Section 440 relates to the retention of such prisoners at Napanoch after the expiration of the terms for which they were sentenced to such prison, reformatory or penitentiary. For such a prisoner, sentenced originally for a prescribed term for a felony, an order of retention, which in effect is recommitment, authorizing his retention at the Napanoch institution, is made necessary by that section after the expiration of such sentence, if, in the opinion of the superintendent of such institution, such prisoner is a mental defective. In such a case a new examination and a further order of retention is required; and the judge to whom the application therefor is made must be satisfied that such prisoner is a mental defective. Said section 440 does not apply to inmates at the Napanoch institution other than such prisoners. It does not apply to inmates who are directly committed to such institution under sections 438 and 444 of said article 17. The policy of the law seems clearly to be that one who is directly committed to said institution as a mental defective delinquent, as relator was, is committed for an indefinite term and until paroled by the superintendent of that institution. (Correction Law, § 438 [added to former Mental Deficiency Law, Laws of 1919, chap. 633, by Laws of 1921, chap. 483, as section 24-b thereof, and later made section 468 of former Prison Law by Laws of 1927, chap. 426, § 14, and renum. section 438 by Laws of 1929, chap. 243, § 18]; Id. § 444 [derived from §§ 25 and 26 of former Mental Deficiency Law, Laws of 1919, chap. 633, as amd. by Laws of 1925, chap. 676, and later made section 474 of former Prison Law by Laws of 1927, chap. 426, § 14, and renum. section 444 by Laws of 1929, chap. 243, § 18]; Id. § 445 [derived from section 38 of the former Mental Deficiency Law, Laws of 1919, chap. 633, as amd. by Laws of 1921, chap. 483, and later made section 475 of the former Prison Law by Laws of 1927, chap. 426, § 14, and renum. section 445 and amd. by Laws of 1929, chap. 243, § 18].) There he is to be held, for his own welfare and

the welfare of others, until he shows by his conduct, record and his compliance with the rules and regulations of the institution that he is a fit person to be returned to society by parole. At any time during such parole, upon evidence satisfactory to the superintendent, such inmate must be returned to the institution, where he may be detained until again permitted to leave the institution on parole. The Legislature made provision, however, against the arbitrary retention of an inmate by specifically providing for habeas corpus to test the fact of mental defectiveness, if delivery from custody is sought. (Correction Law, § 446 [derived from section 35 of former Mental Deficiency Law, Laws of 1919, chap. 633, as amd. by Laws of 1921, chap. 483, and later made section 476 of the former Prison Law by Laws of 1927, chap. 426, § 14, and renum. section 446 and amd. by Laws of 1929, chap. 243, § 18].) Where the fact of the mental defectiveness of the inmate is thus material to such inquiry, the history of the inmate as it appears in the case records of the institution may be given in evidence, and the superintendent of the institution, or any other proper person, may be sworn touching the mental condition of such person. (Id.) The Legislature also safeguarded these inmates by placing the institution in the charge of a trained superintendent who must be a physician and must have had extensive experience in the care and treatment of mental defectives or of the insane (Correction Law, § 432) and who exercises his powers, subject to the visitation and inspection of the State Commission of Correction and the head of the Department of Mental Hygiene and subject to rules and regulations established by the Commissioner of Correction. (Correction Law, §§ 430, 431.) Under this restraint and supervision, the superintendent is made the responsible party to determine when an inmate, committed directly to the institution, as relator was, shall be released upon society from his indefinite term of commitment. It follows that in discharging the relator on the first ground, namely, that he was illegally detained without an order of detention or recommitment, there was an erroneous determination.

Moreover, we think there is no adequate basis for the finding that the relator is not now a mental defective. Such finding is against the evidence, which, under the statute, includes the case record of the relator as well as the testimony of the superintendent. The learned justice, after a brief oral examination of the relator, and unaided by any expert opinion, has reached a conclusion directly opposed to that of the trained experts of the State. In such a habeas corpus proceeding involving the custody of these mental defective delinquents, a judge ought to disregard the opinions of these experts in mental defects with great caution. It is a matter

for expert opinion and it would seem that there ought to be some expert opinion evidence to sustain the judge who would release in habeas corpus an inmate who is still thought to be a mental defective by the superintendent of this institution. (*People ex rel. Benson* v. *Burdick*, 215 App. Div. 163.) Dr. Thayer, the superintendent, who has been specializing in the care, custody and parole of these mental defectives for twenty-seven years, testified that the case record of the relator showed the mental age of the relator to be about nine years although actually he is twenty-four years of age; and that he is subnormal and mentally defective and has had an unsatisfactory conduct record in the institution. Dr. Thayer was not permitted to express an opinion as to whether relator is a fit person to be paroled at this time, notwithstanding the provision of the statute that his testimony may be given " touching the mental condition of such person " (Correction Law, § 446) and the further provision of the statute which makes him the responsible person to parole an inmate under rules and regulations of the Commissioner of Correction. (Id. § 445.) And so far as the record shows, such rules and regulations, if any, were not disclosed. The opinion of the superintendent, though not necessarily controlling, is entitled to great weight, particularly in the absence of expert testimony to the contrary, and should have been received. And the relator, having the burden of proving illegal detention, should have offered the rules and regulations, if any, in evidence to permit the court to know the limitations of authority of the superintendent.

The order should be reversed and the relator remanded to the custody of the superintendent of said institution at Napanoch, N. Y.

DAVIS, WHITMYER, HILL and HASBROUCK, JJ., concur.

Order reversed on the law and relator remanded to the custody of the superintendent of the Institution for Male Defective Delinquents, Napanoch, N. Y.