THE PEOPLE OF THE STATE OF NEW YORK ex rel. CHARLES MOR-RIALE, Relator, against VERNON C. BRANHAM, as Superintendent of Woodbourne Institution for Defective Delinquents, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

Third Department, June 30, 1943.

Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; A. W. Feinberg, Assistant Attorney-General, of counsel), for appellant.

Caesar B. F. Barra (Ralph J. Barra of counsel), for relator.

HEFFERNAN, J. The parties have stipulated that only questions of law are involved in this proceeding.

On March 17, 1932, relator was convicted in the Kings County Court of the crime of robbery in the second degree. He was thereupon examined as to his mental condition and it was determined that he was a mentally defective person and thereupon the court committed him to the institution for male defective delinquents at Napanoch, New York. Two years later he was paroled from that institution. On December 31, 1934, while still on parole relator held up a pool room in the city of New York at the point of a gun and took from the patrons cash and jewelry. He was again indicted for the crime of robbery but was permitted to plead guilty to attempted robbery in the third degree. An information was filed pursuant to section 1943 of the Penal Law charging him with being a second offender which he admitted. He was thereupon sentenced by the Bronx County Court on April 5, 1935, to a definite term of six years imprisonment at Sing Sing. In the commitment the court recommended " that this defendant receive hospital treatment for his mental condition." On April 24, 1935, relator was again transferred to Napanoch. On March 15, 1938, he was transferred from the Napanoch institution to the Woodbourne Institution for Defective Delinquents at Woodbourne, New York.

A few days before the expiration of relator's six-year term the respondent petitioned the County Court of Sullivan County for an order of recommitment authorizing the relator's retention after the expiration of his sentence. Upon presentation of this petition the court appointed two qualified examiners to examine the relator. They made such an examination and made a certificate that relator is a mentally defective person. The court thereupon made an order of recommitment. Thereafter relator instituted this proceeding alleging that he is a person of normal intelligence and that the order of recommitment is null and void by reason of the fact that he had not been notified of the steps leading to its execution.

It is stipulated that relator was given no notice of the presentation of the petition and that he had no knowledge thereof nor was he accorded any hearing before the court.

The order for relator's recommitment was made pursuant to the provisions of section 440 of the Correction Law. The pertinent provisions of that section are: "When the term of a prisoner confined in such institution at Napanoch has expired, and, in the opinion of the superintendent thereof, such prisoner is a mental defective the superintendent shall apply to a judge of a court of record to cause an examination to be made of such person, by two qualified examiners * * *. Such superintendent shall apply to a judge of a court of record for an order authorizing him to retain such prisoner at the institution, accompanying such application with such certificate of mental defect. Such judge, if satisfied that such prisoner is a mental defective, shall issue an order of retention, and such superintendent shall thereupon retain the prisoner at the institution until discharged as provided by law. * * *."

On this appeal it is relator's contention that this statute is unconstitutional in that it operates to deprive him of his liberty without due process of law. The State asserts that the statute is constitutional and that in no event was relator entitled to a discharge under a writ of habeas corpus without submitting the question of his mental condition to the court for determination.

In order to pass on the question intelligently it is necessary to consider several statutory provisions. Section 460 of the Correction Law makes applicable to Woodbourne Institution the provisions of section 440 which apply to Napanoch. Section 446 of the Correction Law (enacted at the same time as section 440) provides for inquiry into the fact of mental defectiveness under a writ of habeas corpus: "§ 446. Habeas corpus. At the hearing on the return of a writ of habeas corpus, if any, lawfully granted, under which the delivery from custody of an inmate of such institution (Napanoch, Woodbourne) is sought, and where the fact of his mental defectiveness is material to the inquiry, the history of the inmate as it appears in the case records may be given in evidence, and the superintendent of the institution, or any other proper person, may be sworn touching the mental condition of such person. * * *." Section 204 of the Mental Hygiene Law makes special provision for habeas corpus in the case, among others, of persons in custody as mental defectives: "§ 204. Habeas corpus. Any one in custody as an insane person,

mental defective or epileptic, or in custody as an inebriate pursuant to section two hundred and one, is entitled to a writ of habeas corpus, upon a proper application made by him or some relative or friend in his behalf. Upon the return of such writ, the fact of his insanity, mental defectiveness, epilepsy or inebriety, shall be inquired into and determined. * * *.'' Under section 445 of the Correction Law the superintendents of Napanoch and Woodbourne are given practically unlimited power of parole and power of supervision of an inmate on parole.

Protection against arbitrary use or abuse of the powers given these superintendents is afforded by section 204 of the Mental Hygiene Law and section 446 of the Correction Law in respect of inquiry into mental condition upon a writ of habeas corpus. The language of section 384 and section 408 of the Correction Law dealing with the retention of persons confined in Dannemora or Matteawan State Hospital is similar to that of section 440 dealing with the retention of persons confined at Napanoch or Woodbourne. The provision for direct commitment of mental defectives (Correction Law, § 438) likewise is based only on the certificate of two qualified examiners, with no provision for a court hearing except as given by the sections of law dealing with habeas corpus. It is likewise worthy of note that the courts in cases involving dispensation with personal notice in applications for the commitment of the insane under section 74 of the Mental Hygiene Law have held that such dispensation does not impair the constitutional rights of the alleged lunatic. (*Matter of Walker,* 57 App. Div. 1; *Parker* v. *Willard State Hospital,* 50 App. Div. 622; *Matter of Andrews,* 126 App. Div. 794; *Brayman* v. *Grant,* 130 App. Div. 272.)

Similar provisions for the *ex parte* commitment of a person are found in section 472-b of the Social Welfare Law which permits a judge of a court of record to commit inebriate females upon certificate of two physicians, subject to the right of review upon habeas corpus under section 472-d of the same law.

The Special Term did not consider the question of relator's mentality, he having specifically withdrawn that issue from consideration, but based its decision on the ground that the statute is constitutional but that relator was entitled thereunder to notice of the application for an order to retain him after the expiration of his term of imprisonment.

Unquestionably when relator committed a crime in December, 1934, he violated his parole from Napanoch. For that vio-

lation it seems to me that he should have been returned directly to Napanoch without further proceedings in Bronx County. Had this been done he would have been retained indefinitely without further recommitment and his counsel so concedes on this appeal. (Correction Law, §§ 438, 440; *People ex rel. Romano* v. *Thayer*, 229 App. Div. 687; *People ex rel. Guadino* v. *Superintendent of Institution for Male Defective Delinquents, Napanoch*, 263 App. Div. 1042.)

After a consideration of these various statutes it seems to us that section 440 is not unconstitutional. Neither do we think that relator was entitled to notice of the application for the order of his recommitment. Unquestionably the judge to whom it was presented might in the exercise of his discretion have required notice to be given him. The judge appointed two qualified examiners and on their written report he concluded that relator is mentally defective. Undoubtedly the State may, both for the protection of society and for the welfare of an insane person himself, or one mentally defective, place such person under restraint. Inasmuch as immediate action may be necessary for the protection of insane persons and others, the guaranty of due process does not require notice to the alleged insane person and opportunity for a hearing as a condition precedent to temporary restraint (16 C. J. S., Constitutional Law, § 598). The right to restrain an insane person is not governed by the general law which provides that no one shall be deprived of life, liberty or property without due process of law. Restraint under such conditions does not offend against the constitutional inhibition. (*Maxwell* v. *Maxwell*, 189 Iowa 7.)

In this case the order of recommitment settles nothing finally or conclusively against relator. It does not take from him the care or control of his property. He is entitled as a matter of right to institute judicial proceedings to determine the necessity and propriety of his commitment. He is not, therefore, deprived of liberty without due process of law. The right to institute judicial proceedings under the statutes to which we have referred is a sufficient protection of the subject to meet constitutional requirements. (*Matter of Dowdell*, 169 Mass. 387.) Not only that but in such a proceeding he has an absolute right to a jury trial. (*Sporza* v. *German Savings Bank*, 192 N. Y. 8.) His right to institute judicial proceedings under the statute to which we have referred is sufficient protection of his liberty to meet constitutional requirements. (*People ex rel. Peabody* v. *Chanler*, 133 App. Div. 159, affd. on opinions below, 196 N. Y. 525.)

We have examined the cases cited by relator and in our opinion they are clearly distinguishable. We are also satisfied that in the absence of a finding that relator is of normal intelligence the court had no right to discharge him. Then, too, when relator was returned to Napanoch after his second conviction he also came back as a parole violator under the 1932 commitment. It seems to us that respondent was authorized to detain him indefinitely under the first commitment.

The order appealed from should be reversed on the law, the writ of habeas corpus dismissed, and relator remanded to the custody of the superintendent of Woodbourne Institution.

SCHENCK, J. (dissenting). The relator was sentenced as a second offender on April 5, 1935, to Sing Sing prison for a definite term of six years. Later in that year he was transferred to an institution for defective delinquents at Napanoch as a mental defective and in 1938, he was transferred to Woodbourne Institution for Defective Delinquents and while there confined obtained a writ of habeas corpus.

The sole question here presented is whether section 440 of the Correction Law is unconstitutional, or, if constitutional, whether notice of and an opportunity to be heard upon an application for an order of further retention is required under the statute.

Section 440 of the Correction Law provides, in substance, that when the term of a person confined in Woodbourne or Napanoch has expired and in the opinion of the superintendent such person is a mental defective, the superintendent shall apply to a judge of a court of record to cause an examination to be made of such person by two qualified examiners to be designated by the judge. If the examiners are satisfied that such person is a mental defective they shall make a certificate to that effect and upon such certificate the superintendent shall apply to the judge for an order authorizing him to retain the prisoner at such institution. "Such judge, if satisfied that such prisoner is a mental defective, shall issue an order of retention, and such superintendent shall thereupon retain the prisoner at the institution until discharged as provided by law."

Shortly before the expiration of relator's imprisonment, the superintendent presented a petition to a proper judge setting forth that relator was mentally deficient. After an examination by qualified examiners, who certified that he was a mental defective, respondent superintendent applied for an order authorizing him to retain relator, which order was granted.

No notice of such proceeding was given the relator, nor was he brought into court nor given any opportunity to be heard in his own behalf.

From a reading of the statute I think that notice and an opportunity to be heard may be implied. " The expression [in the statute] ' such judge, is satisfied ' imports a judicial hearing on this issue." (*Matter of Naylor*, 284 N. Y. 188.) Such a proceeding as this carried on and concluded without notice and without a hearing may not be termed due process of law. (*People ex rel. Ordway* v. *St. Saviour's Sanitarium*, 34 App. Div. 363.) Mental deficiency is not a disease but a condition. (*Matter of Johnson* v. *Hoffman*, 148 Misc. 766.) This relator was not an insane person in any sense of the word. He was retained in custody, not upon facts ascertained upon a hearing but on the certificate of medical examiners. He was given no opportunity to meet the charge that he was a mental defective. He had been committed to a State prison for a definite period for the crime of attempted robbery and by reason of the expiration of such sentence an order of retention provided by statute was necessary. In *People ex rel. Barone* v. *Fox* (202 N. Y. 616) the Appellate Division (144 App. Div. 611, 622, 626) was reversed upon the dissenting opinion of CLARKE, J. The statute involved in that case was somewhat similar to the provisions contained in section 440 of the Correction Law. It was there held that such statute violates the provisions of article I, section 6, of the State Constitution and amendment XIV of the Constitution of the United States " because it requires the magistrate to commit the prisoner upon the report of a non-judicial officer of the ascertainment of a non-traversable state of facts in an investigation made by him out of court. * * * A person deprived of liberty upon facts not ascertained upon a hearing is so deprived without due process of law."

This relator was denied notice of the application for the retention order after his fixed term of imprisonment had expired and he was denied a hearing upon the question of his mental condition. An order of retention has been granted, which retention, incidentally, may result in incarceration for the period of relator's life. Clearly, he was entitled to an opportunity to be heard, for " unless there has been opportunity * * * to meet a charge, there is no due process of law." (*Hovey* v. *Elliott*, 167 U. S. 409; *People* v. *Henriques & Co.*, 267 N. Y. 402.)

It is conceded that had relator in the first instance been returned to Napanoch as a parole violator, no other proceeding

would be necessary. (*People ex rel. Romano* v. *Thayer,* 229 App. Div. 687.) The fact remains, however, that he was sentenced in 1935 by the Bronx County court for a definite term of six years in Sing Sing prison. When that sentence expired the proceeding under section 440 of the Correction Law was definitely required. We are concerned, therefore, only with the question as to whether or not he was entitled to notice and a judicial hearing. To deny such notice and hearing is to deprive him of his liberty without the due process of law guaranteed to him by the Constitution of this State.

The order appealed from should be affirmed.

CRAPSER and BLISS, JJ., concur with HEFFERNAN, J.; SCHENCK, J., dissents in opinion in which Hill, P. J., concurs.

Order reversed on the law, the writ of habeas corpus dismissed and relator remanded to the custody of the superintendent of Woodbourne Institution.