In the Matter of EMANUEL MARALIAN.

ARSEN M. MARALIAN, Petitioner; PILGRIM STATE HOSPITAL, Respondent.

Supreme Court, Special Term, Queens County, July 19, 1943.

*Jacob Nudell* for petitioner.

*Nathaniel L. Goldstein, Attorney-General (Francis X. Wazeter* of counsel), for respondent.

COLDEN, J. This is a proceeding brought by Arsen M. Maralian for the discharge of his son, Emanuel Maralian, an unrecovered patient, from the Pilgrim State Hospital, pursuant to the provisions of subdivision 3 of section 87 of the Mental Hygiene Law. Said subdivision, insofar as applicable to this case, reads as follows:

" 3. Any patient who is not recovered but whose discharge, in the judgment of the superintendent, will not be detrimental to the public welfare, or injurious to the patient; provided, however, that before making such certificate, the superintendent shall satisfy himself, by sufficient proof, that friends or relatives of the patient are willing and financially able to receive and properly care for such patient after his discharge.

" When the superintendent is unwilling to certify to the discharge of an unrecovered patient upon request, and so certifies in writing, giving his reasons therefor, any judge of a court of record in the judicial district in which the hospital is situated, upon such certificate and an opportunity of a hearing thereon being accorded the superintendent, and upon such other proofs as may be produced before him, may direct, by order, the discharge of such patient, upon such security to the people of the state as he may require, for the good behavior and maintenance of the patient."

Emanuel Maralian has been a patient at Pilgrim State Hospital since October 27, 1937. He is twenty-five years of age, a high school graduate, and was attending college shortly before he became mentally ill. His parents and other members of his family are devoted to him, visit him at the hospital apparently at every opportunity, and are united in their earnest and sincere plea that this court exercise the authority vested in it by statute and return the patient to his parental home.

The father of the patient made formal application for the discharge of his son, and in response thereto Dr. Harry J. Worthing, Superintendent of Pilgrim State Hospital, under date of May 3, 1943, made the certificate provided for by the quoted section of the Mental Hygiene Law, in which he stated that he was unwilling to certify to the discharge of the patient and gave two reasons, (1) the present mental condition of the patient and (2) the fact that he, as Superintendent, was not satisfied that the patient would receive adequate supervision in the parental home. Thereafter this proceeding was brought to obtain the order of this court for the discharge of the unrecovered patient, pursuant to the provisions of the quoted subdivision of section 87 of the Mental Hygiene Law. At the hearing the father, relatives, friends and neighbors testified at length with reference to their observation, knowledge and opinions concerning the patient.

The law under which this proceeding was brought does not establish the standards of proof which the court may require

before the order may be granted. It provides merely that a hearing shall be accorded the superintendent, and "upon such other proofs as may be produced before him, may direct, by order, the discharge of such patient". As to what shall constitute "such other proofs" the statute is silent.

Inasmuch as the practical effect of the order sought is to overrule the official determination of a responsible official of the State of New York, made in the discharge of his official duties, it would seem that the minimum burden of proof to be borne by one seeking to obtain such an order from the court would be to show, by a fair preponderance of the credible evidence, that the Superintendent had made an erroneous or ill-considered decision. The first paragraph of subdivision 3 of section 87 states the conditions under which the superintendent may, of his own volition (and presumably upon request), discharge an unrecovered patient. They are, (1) that his discharge will not be detrimental to the public welfare, or, (2) injurious to the patient, and (3) that friends or relatives of the patient are willing and financially able to receive and properly care for such patient after his discharge.

At the hearing the Superintendent offered proof through Dr. Richard B. Foster, First Assistant Physician at Pilgrim State Hospital, to show that the present mental condition of the patient and the present parental attitude do not warrant the determination by the Superintendent that conditions exist under which the certificate could or should properly be issued. The testimony of Dr. Foster was factual and sympathetic, and undisturbed on cross-examination. The petitioner produced no medical or other expert testimony to controvert that of Dr. Foster. The testimony of the lay witnesses, while entirely acceptable and believable as to the willingness and ability of the parents to receive their son back in their home and, through their great love and affection for him, to give him the care which his condition requires, yet wholly fails to prove the existence of two of the other required conditions, i. e., (1) that his discharge will not be detrimental to the public welfare, and (2) that his discharge will not be injurious to the patient. The testimony of the petitioner and his witnesses indicated that they and the patient have always been accorded kind, sympathetic and understanding consideration by the Superintendent and the physicians at the hospital, and by such testimony negative any suggestion that the refusal of the Superintendent to certify the patient was a decision that was ill-advised, ill-considered, capricious, or prejudiced.

The petitioner having failed to sustain the burden of proof as to the elements referred to above, this court cannot, with propriety, issue an order which in effect would substitute the judgment of laymen for that of the Superintendent and the First Assistant Physician of the hospital, both experts in their specialized field of medicine whose views are based upon long observation and treatment of the patient. (Cf. *People ex rel. Benson* v. *Burdick,* 215 App. Div. 163, 165, 166.) The court is therefore constrained to deny the application. Submit order.