[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 436 
The plaintiff, the City of Newark, seeks specific performance of the defendant's agreement to purchase premises in the City of Newark for which the defendant was the highest bidder at a public sale conducted by the City under the provisions of the In Rem
Tax Foreclosure Act (1948), R.S. 54:5-104.29 et seq. The defendant resists on the ground that the title is not marketable, in that it depends upon an antecedent foreclosure by the City of Newark of a tax sale certificate, such foreclosure having been held under *Page 437 
the aforementioned In Rem Tax Foreclosure Act. The defendant's answer sets forth that that Act is unconstitutional in that (1) it fails to provide, by service of process or by substituted service, for notice to the owner and other persons interested in the lands affected by the foreclosure; (2) it fails to provide for service of process upon infants and incompetents through guardians or other legal representatives; (3) it was here applied to the foreclosure of a tax certificate acquired by the plaintiff prior to the enactment of the Act; (4) it impairs the obligation of contracts as existing between the City, as taxing authority, and the owner of the lands under foreclosure; (5) it deprives the owner and other parties in interest of the right of redemption. By reason of the foregoing objections the defendant claims that proceedings under the Act constitute a "denial of due process" and is objectionable in the constitutional sense in that it impairs the obligation of contract.
The matter is before the court on plaintiff's motion for a summary judgment on the pleadings. In dealing with this motion one admitted fact need be specially mentioned. Paragraph 3 of the complaint alleges, and paragraph 3 of the answer admits, that the foreclosure proceedings here involved "were conducted by plaintiff in full compliance with the In Rem Tax Foreclosure Act (1948), R.S. 54:5-104.29." Thus it may be assumed that all the procedural requirements of the Act were complied with and that the infirmity, if any there be, rests in the statute itself, not in the proceedings taken thereunder. The defendant's objections will now be considered.
It has been quite generally held that the legislature of a state has the power to enact summary measures for the enforcement of the collection of taxes, even to the extent of selling property upon notice given only by publication to the parties in interest, and that such summary measures do not offend the "due process" requirements of law. Gathwright v. Mayor and CityCouncil of Baltimore, 30 A.2d 252 (Court of Appeals,Maryland, 1943). The legislature may within reasonable limits prescribe the kind of notice to be *Page 438 
given to the affected parties, and when so given the parties in interest have been afforded the due process of law. Monroe v.Douglas, 4 Sandf. Ch. 182. Every presumption exists in favor of such legislation and recognition can be denied only where it is manifestly in excess of the legislative power. Howes v. Mass.Unemployment Comp. Comm, 5 N.E.2d 720 (Supreme JudicialCourt of Mass. 1936). An important distinction not to be lost sight of is that which exists between actions in personam and actions distinctively in rem. In the former class personal service is indispensable to the validity of the judgment or decree. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565. However, in "real" actions the proceeding seeks to reach or bind the res, a result which may lawfully and properly be accomplished through notice by publication or other substituted service. Gathwright v. Mayor and City Council of Baltimore,supra. Actions which are often referred to as "quasi in rem"
differ from "real" actions only in that the former, though brought against persons, seek only to subject the property of such persons to the satisfaction of claims. Amparo Mining Co. v.Fidelity Trust Co., 74 N.J. Eq. 197, 71 A. 605; affirmed,75 N.J. Eq. 555, 73 A. 249; Solomon v. Yudkin-Krell,2 N.J. Super. 315, 63 A.2d 715.
The Act under consideration here expressly provides, in section 5 thereof, that in any proceeding thereunder no personal decree shall be entered against any person. The legislature has further provided in section 19 of the Act that in the notice to be published there be included the statement that "the proceedings are brought against the land only and no personal judgment or decree may be entered therein." Aside from the express declaration contained in the Act that the proceeding is against the land only (and is therefore one in rem), the uniform view concerning tax foreclosures is that they are proceedings strictlyin rem. As was pointed out in Gathwright v. Mayor and CityCouncil of Baltimore, supra, the purpose of the proceeding is to subject specific property to the payment of taxes but no personal liability flows from the foreclosure judgment or decree, and even costs of foreclosure *Page 439 
may not be assessed against the parties in interest, since the taxes together with costs of action are collectable only out of the res. In the cited case the court rejected the claim that a tax foreclosure suit possesses the attributes of a strict foreclosure, where personal service is an indispensable requirement.
The State of New York in 1939 enacted legislation quite like our own Act, here under discussion. It is observed that that legislation was sustained by the New York courts as being constitutionally inoffensive. See City of Buffalo v. Hawkes,266 App. Div. 480; affirmed, 251 N.Y. 588; City of Utica v.Priote, 178 Misc. 925; affirmed, 288 N.Y. 477; City of NewRochelle v. Echo Bay Water Front Corp., 182 Misc. 176,42 N.Y.S.2d 645; affirmed by App. Div. 49 N.Y.S.2d 673,268 App. Div. 182; affirmed by Court of Appeals, 294 N.Y. 678,60 N.E.2d 809 (1945), certiorari denied by U.S. Supreme Court,326 U.S. 720 (1945). There is, however, one distinction between the New York Act and our own in respect of the requirements for service of notice. Under the New York Act notice to parties in interest is required to be given by posting, publication, and mailing. Under the New Jersey Act only posting and publication are mandatory; mailing is only permissive. It does not appear from the pleadings in the case at bar whether or not there was in fact a notice by mail to the affected parties and the query is whether notice by posting and publication alone constitutes sufficient notice within the concept of due process.
It is uniformly recognized that tax liens imposed for the benefit of municipalities and other taxing authorities may be enforced by summary proceedings. All that is required is that within reasonable limitations notice of such proceedings be given. As was said by the United States Supreme Court in NorthLaramie Land Co. v. Hoffman, 268 U.S. 276, 283,45 S.Ct. 491, 494, 69 L.Ed. 953:
"All persons are charged with knowledge of the provisions of statutes and must take note of the procedure adopted by them and when that procedure is not unreasonable or arbitrary there are no constitutional limitations relieving them from conforming to it. This is especially *Page 440 
the case with respect to those statutes relating to the taxation or condemnation of land. Such statutes are universally in force and are general in their application, facts of which the land owner must take account in providing for the management of his property and safeguarding his interest in it. Owners of real estate may so order their affairs that they may be informed of tax or condemnation proceedings of which there is published notice, and the law may be framed in recognition of that fact. In consequence, it has been uniformly held that statutes providing for taxation or condemnation of land may adopt a procedure, summary in character, and that notice of such proceedings may be indirect, provided only that the period of notice of the initiation of proceedings and the method of giving it are reasonably adapted to the nature of the proceedings and their subject matter and afford to the property owner reasonable opportunity at some stage of the proceedings to protect his property from an arbitrary or unjust appropriation."
In Leigh v. Green, 193 U.S. 79 (1904), the Supreme Court of the United States passed on a Nebraska statute which provided that in a tax foreclosure action the proceeding may be brought against the land itself where the owner is unknown. The requirement for notice was that there be publication of the fact of foreclosure, together with some identification of the property under foreclosure, the amount of taxes in arrears, and a date by which appearance may be made or answer may be filed. After pointing out that the law sanctions the most summary methods for the seizure and sale of property for the satisfaction of taxes and public dues and that such seizure and methods do not amount to a taking of property without due process of law, the court said:
"In the present case, the argument is that, as the State has not seen fit to resort to the drastic remedy of summary sale of the land for delinquent taxes, but has created a lien in favor of a purchaser, at tax sale, after permitting two years to elapse in which the owner or lienholder may redeem the property, it has in authorizing a foreclosure without actual service, taken property without due process of law, because the proceedings and sale to satisfy the tax lien do not require all lienholders within the jurisdiction of the court to be served with process. If the State may proceed summarily, we see no reason why it may not resort to such judicial proceedings as are authorized in this case. And if the State may do so, is the property owner injured by a transfer of such rights to the purchaser at the tax sale, who is invested with the authority of the State?
 * * * * * * * *Page 441 
"In the statute under consideration, for the purpose of collecting the public revenue, the State has provided for the enforcement of a lien by the purchaser at a tax sale, and authorized him to proceed against the land subject to the tax to enforce the right conferred by the State. The State has a right to adopt its own method of collecting its taxes, which can only be interfered with by Federal authority when necessary for the protection of rights guaranteed by the Federal Constitution. In authorizing the proceedings to enforce the payment of the taxes upon lands sold to a purchaser at tax sale, the State is in exercise of its sovereign power to raise revenue essential to carry on the affairs of state and the due administration of the laws. This fact should not be overlooked in determining the nature and extent of the powers to be exercised. `The process of taxation does not require the same kind of notice as is required in a suit at law, or even in proceedings for taking private property under the power of eminent domain. It involves no violation of due process of law when it is executed according to customary forms and established usages, or in subordination to the principles which underlie them.' Bell's Gap Railroad v.Pennsylvania, 134 U.S. 232, 239.
 * * * * * * *
"Nor is the remedy given in derogation of individual rights, as long recognized in proceedings in rem, when the Fourteenth Amendment was adopted. The statute undertakes to proceed inrem, by making the land, as such, answer for the public dues. Of course, merely giving a name to an action as concerning the thing rather than personal rights in it cannot justify the procedure, if in fact the property owner is deprived of his estate without due process of law. But it is to be remembered that the primary object of the statute is to reach the land which has been assessed. Of such proceedings it is said in Cooley on Taxation
(2d ed.) 527: `Proceedings of this nature are not usually proceedings against parties; nor, in the case of lands or interests belonging to persons unknown, can they be. They are proceedings which have regard to the land itself, rather than to the owners of the land; and if the owners are named in the proceedings, and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing shall not be lost to them, than from any necessity that the case shall assume that form.' And see Winona Land Co. v. Minnesota, 159 U.S. 526.
 * * * * * * *
"The principles applicable which may be deduced from the authorities we think lead to this result: Where the State seeks directly or by authorization to others to sell land for taxes upon proceedings to enforce a lien for the payment thereof, it may proceed directly against the land within the jurisdiction of the court, and a notice which permits all interested, who are `so minded,' to ascertain that it is to be subjected to sale to answer for taxes, and to appear and be heard, whether to be found within the jurisdiction or not, is due process of law within the Fourteenth Amendment to the Constitution. *Page 442 
"In the case under consideration the notice was sufficiently clear as to the lands to be sold; the lienholders investigating the title could readily have seen in the public records that the taxes were unpaid and a lien outstanding, which, after two years, might be foreclosed, and the lands sold and by the laws of the State an indefeasible title given to the purchaser. Such lienholder had the right for two years to redeem, or, had he appeared in the foreclosure case, to set up his rights in the land. These proceedings arise in aid of the right and power of the State to collect the public revenue, and did not, in our opinion, abridge the right of the lienholder to the protection guaranteed by the Constitution against the taking of property without due process of law."
Our own Act, here being considered, provides, amongst other things, as follows:
1. A foreclosure proceeding may not be instituted sooner than two years after the date of the tax sale out of which the tax certificate arose and may not be so instituted unless no part of the taxes levied for four calendar years next preceding the date of the petition has been paid. The proceedings must be commenced by a petition verified by the tax collector and it must contain the tax foreclosure list and the names of the persons who, according to the public records, appear to be the owners of the property.
2. The petition must be filed with the county recording officer.
3. There must be an order of publication under which a statutory form of foreclosure notice must be published in a newspaper circulating in the municipality wherein the lands to be affected are located.
4. Within fifteen days after the publication of the notice of foreclosure a copy thereof must be posted in the office of the tax collector of the municipality and in the office of the county recording officer of the county where the lands are located and at three other conspicuous places within the taxing district in which the lands are located. Within the same fifteen days a notice may be mailed to affected parties, but such mailing is merely permissive and the Act provides that neither the failure so to mail nor the failure of delivery of such mailing shall affect the validity of the proceedings. *Page 443 
I have no doubt that the requirements for posting, publication and recording constitute an appropriate and adequate method for giving notice of the foreclosure action. It is not unreasonable to expect owners and other persons interested in real estate holdings to exhibit some interest in and concern about their investments. Long-continued indifference to his own property interests must indeed attend the owner whose property is brought within the operation of the Act, since the foreclosure may not be had until two years after the tax sale and only if he has failed to pay any part of the taxes for four years preceding the date of the foreclosure petition. Every owner knows, and certainly must be held to know, that his unpaid taxes are in arrears and that sooner or later the municipality is under compulsion to satisfy its taxes out of the property itself, since there is no personal liability therefor. The slightest attention to his property, not even rising to the degree of diligence, would reveal to the owner the unpaid taxes, the tax lien, and the foreclosure proceeding. Then, too, he is in law chargeable with knowledge of the measures allowed by law for the summary enforcement of the tax arrears. For such an owner to hide his head in the sands and disclaim all notice except that given directly and personally to him is to take a position which, if allowed, might well paralyze the functions of government, for the right to levy and collect taxes is not only recognized as a supreme power but also as a supreme necessity. The welfare of organized society depends upon the free exercise of that power and the full satisfaction of that necessity.
The claim that the Act violates the contract clause of the Constitution is untenable. True, the tax sale certificate here was obtained before the Act was enacted. That certificate did not, however, create a contract between the municipality and the owner which barred forever any new remedy which the legislature might furnish for the enforcement of the collection of those unpaid taxes reflected by the tax certificate. In the case ofLeague v. Texas, 184 U.S. 156, the United States Supreme Court said: *Page 444 
"That a state may adopt new remedies for the collection of taxes, and apply those remedies to taxes already delinquent, without any violation of the Federal Constitution, is not a matter of doubt. A delinquent taxpayer has no vested right in an existing mode of collecting taxes. There is no contract between him and the state that the latter will not vary the mode of collection. Indeed, generally speaking, a party has no vested right in a mere matter of remedy; that is subject to legislative change. And a new remedy may be resorted to unless in some of its special provisions a constitutional right of the debtor or obligor is infringed. `There is no vested right in a mode of procedure. Each succeeding legislature may establish a different one, providing only that in each are preserved the essential elements of protection.'"
I find nothing in the Act which infringes upon any constitutional rights residing in the owners delinquent in taxes at the time the Act took effect. There is no curtailment of the right of redemption or in reasonable opportunity for defense. The Act by its express terms operates retroactively on antecedent certificates of tax sales issued and held by municipalities. I find nothing constitutionally offensive in such retroactive application of the legislation in question.
The defendant's amended answer alleges that at the time of the commencement of the foreclosure action underlying the plaintiff's title, there may have been in existence infants, lunatics and other incompetents holding interests in the lands affected by the foreclosure proceedings, and that such persons were not brought into the foreclosure action by process and by appointment of guardians ad litem to appear and defend for them. It is also apparent from an analysis of the Act in question that the only search of the public records that need be made by foreclosing plaintiffs is one to determine the last record owner of the property encumbered by the tax certificate of sale. Very possibly such last record owner may be an infant or a lunatic. Again, the last record owner may at the time of the foreclosure be a deceased person and his estate in the property vested, either by devise or by the laws of intestacy, in some person or persons deemed in law to be "incompetent." There is nothing in the Act that requires that such persons be ascertained and their presence as parties accomplished by the appointment of a guardian adlitem. *Page 445 
This, says the defendant in this action, renders titles acquired under the Act doubtful and unmarketable. Is this so?
The Act itself provides that unless the lands be redeemed in the manner provided for in the Act, the right, title, interest or lien of all persons claiming an interest in the land stand foreclosed and forever debarred, and that an indefeasible estate in fee simple in the land shall be vested in the petitioner by force of the decree of the court. Elsewhere in the Act it is provided that the decree shall be binding and final upon all persons having a vested or contingent title or interest in or lien or claim upon or against the lands, and their heirs, devisees, personal representatives, grantees, assigns, or successors in interest, "notwithstanding any infancy or incompetency of such person or persons." Thus by express language the legislative intent clearly appears that infants and other incompetents shall be bound by the final decree in the foreclosure action to the same extent as if they were adults and competents. The mode of statutory notice is one and the same to all persons, regardless of personal status and disability. This is permissible only in an action strictly in rem where the State, in the exercise of its police power to raise revenue for purposes of government, proceeds summarily against the res and not against the person. That concern which courts feel over the rights of infants and other incompetents which calls for the appointment of guardians ad litem, a court-made requirement, may well be relaxed in the face of a public policy declared by legislation of the kind here considered. No guardians ad litem
are appointed for incompetents when the judicial function of levying or increasing assessments on their property is being exercised. There seems to be no good reason why the like omission, when the assessments are being enforced, should be condemned. The entire structure of the In Rem Tax Foreclosure Act would collapse if the foreclosing municipality were required to bring in guardians ad litem as necessary parties. The Legislature did not require it undoubtedly for the reason that such requirement would be out of harmony with the methods prescribed by the Act and the purpose sought to be subserved thereby. *Page 446 
In Levy v. Newman, 130 N.Y. 11 (N.Y. Ct. of Appeals
1891), the plaintiff sought to recover the purchase price of land which the defendant agreed to buy. The defense was unmarketability of title. It appeared that the title depended upon a tax foreclosure against adult and infant owners and that of such owners three infants owned five-ninths of the land as tenants in common with the adult owners. It also appeared that although the infants were personally served with notice of sale, they were not present in the cause by guardians. The court held that the statutes providing the procedure for assessing and collecting taxes and for the sale of land for their non-payment and for the redemption of land so sold "are applicable to infants and persons under disabilities, unless they are excepted from their operation." Citing cases and text. The court held the title good and the plaintiff entitled to recover the purchase price.
The foregoing views dispose of all the controversial points raised in this case. The statute has been examined in its entirety and no constitutional invalidity has been found. The conclusion is that the Act is constitutional and the City's title thereunder is marketable. The defenses set forth in the answer are without merit and the plaintiff is entitled, as a matter of law, to a summary judgment for specific performance. A final judgment to that effect will be entered. *Page 447