In the Matter of the Application of HENRY W. KILLEEN for a Review of the Determination and Acts of the Board of Elections of Erie County upon the Petition Designating Henry Hofstetter a Candidate for Nomination for the Office of Councilman of the City of Buffalo.

Supreme Court, Erie Special Term, October, 1923.

**Public officers — name of insane person should be removed from list of candidates.**

One who stands adjudicated an insane person cannot hold public office, and an application to compel the removal of his name from the list of candidates for city councilman will be granted.

APPLICATION to compel removal of name of candidate from list.

*Kevin Killeen*, for petitioner.

*Robert C. Palmer*, county attorney, *amicus curiæ*.

TAYLOR, HARRY L., J. Pursuant to sections 80 *et seq.* of our Insanity Law, upon an appropriate verified petition and the affi-

davits of two qualified physicians, examiners in lunacy, and following the legal requirement as to notice to the person involved, the County Court of Erie county in October, 1922, adjudged Henry Hofstetter to be insane, and made an order confining him in the Buffalo State Hospital. The statute provides that if either he, or any of his relatives or friends, be or become dissatisfied with such adjudication, a hearing may be had before a jury, and the action of the committing court followed or reversed. No such step has been taken by or on behalf of Hofstetter, although a year has elapsed, less a few days.

Recently a duly executed petition has been presented to the commissioners of elections of the city of Buffalo to place said Hofstetter in nomination for the office of city councilman. As is made clear by our Court of Appeals in *Matter of Lindgren*, 232 N. Y. 59, 62, our commissioners of election act purely ministerially. If a petition presented meets the requirements of the law as to its contents and execution and as to the residence of the petitioner and a few such details, it is the duty of the commissioners to receive the petition and act upon it. It is neither their duty nor their obligation to make any investigations as to the mentality or other qualifications, or lack thereof, of the petitioner.

This proceeding is now instituted to require the commissioners of election to remove the name of Hofstetter from the said list of candidates, and in substance, to enjoin them from submitting his candidacy to the people of the city of Buffalo. Two questions arise: (1) Is Mr. Hofstetter a duly adjudicated insane person? (2) Is such an insane person debarred from holding public office?

It is the rule in many of the states of the Union that an insane person cannot have the right of suffrage. Judge Cooley in his Constitutional Limitations (7th ed. p 902) says: " It has been supposed that these unfortunate classes, by the common political law of England and of this country, were excluded * * * from * * * suffrage, even though not prohibited therefrom by any express constitutional or statutory provision." And, certainly, if such a person cannot have the right of suffrage, he cannot hold public office.

It is true that a proceeding is provided in our statute whereby a person may be adjudicated incompetent and a committee appointed over his person or property or both. It is equally true that a person adjudged insane, as is Mr. Hofstetter, does not lose his property rights, nor most of his individual rights and liberties. However, the right to hold public office is one involving the rights, the welfare, and perhaps the safety of the public; and it is the invariable rule that whenever the right of the individual conflicts

with the public safety or welfare, such individual right must yield.

As I have stated, Mr. Hofstetter has been confined in the Buffalo State Hospital for practically a year without any effort, so far as I know, on the part of himself or his relatives, to obtain his release or a modification of the order of the County Court. People confined in the Buffalo State Hospital are not so restrained but that they have every opportunity to see their relatives and to make application whenever they may desire to the courts. And it is inconceivable to me that Mr. Hofstetter, if sane, would have remained incarcerated as he has for so long a time, without making some effort to have himself released and adjudged competent. Therefore, I cannot help holding that the action of the County Court at present stands as an adjudication, and will so stand until reversed or modified.

Next, can Mr. Hofstetter hold the office of councilman of the city of Buffalo, even though he stand adjudicated insane?

I find nothing in the common law of this state holding directly to the contrary, nor is there anything in our Constitution or statutes prohibiting an insane man from holding public office. However, it is clear to me that to permit an insane person to hold important public office would surely tend to jeopardize the public interests, if not the public safety; in short, to permit such a man to hold such an office, or any public office, seems to me preposterous. The citizens surely have a right to hope that their municipal interests may be looked after by people of rational mentality, and they should have the right to vote accordingly. And the courts should bend every effort to bring about such a result.

It is surely good common sense and, until the opposite doctrine is laid down by superior authority, it is to be the law of this state that a person who stands adjudicated an insane person cannot hold public office.

I am not required to, and I do not hereby readjudicate Mr. Hofstetter insane; but for the reasons above stated, and in the interest of public policy and the public welfare, I am constrained to hold that the present status of Mr. Hofstetter is such that his name cannot be submitted to the electorate of the city of Buffalo as a candidate for the office of city councilman.

Ordered accordingly.