THE PEOPLE OF THE STATE OF NEW YORK ex rel. SALVATORE GAUDINO, Respondent, v. THE SUPERINTENDENT OF THE INSTITUTION FOR MALE DEFECTIVE

Delinquents, Napanoch, N. Y., Respondent. The People of the State of New York, Appellant.— Appeal from an order of the Special Term of the Supreme Court entered in the Ulster county clerk's office on June 26, 1940, discharging relator from custody of the superintendent of the Institution for Male Defective Delinquents at Napanoch, N. Y. Relator was convicted of petit larceny in the County Court of Kings County on December 7, 1938, adjudged mentally defective and committed to the Institution for Male Defective Delinquents at Napanoch, N. Y. On June 3, 1940, his application for a writ of habeas corpus, seeking his release from the institution at Napanoch, was allowed. After a hearing by the Special Term the writ was sustained and the relator released from custody. The Special Term stated that the relator was not dangerous to himself or society and that it could see no harm in allowing the writ. The medical experts are not in serious disagreement. Two doctors for the State testified that relator was a mental defective. The first said he had the mind of a child about nine years old and would always remain so, he was weak-willed and easily led; the other stated that he had a mental age of nine and intelligence quotient of sixty, that he was a mental defective and a moron. He had had some trouble in the institution with other inmates but the doctor stated that for six months he must conduct himself in such a way that he would receive no report against him and then he might go. Both doctors agreed he was not likely to injure himself or others, that he needed supervision and was easily influenced. The expert for the relator admitted that relator's intelligence quotient was fifty-nine, his mental age was nine and that he belonged " in the middle age moron, eight years up to twelve years," and that he would be classed as feeble-minded. He had spent his earlier life in an institution and in ungraded classes at school. His scholastic achievement was below the second grade level. He indicated some mechanical skill and the psychological examination at Napanoch rated him as a medium grade moron and stated that he was definitely mentally defective. He was given an intelligence quotient of sixty-one. The Special Term seemed to be moved principally by the fact that the relator made a good appearance, was tidy, had some mechanical skill and that he would be furnished work and supervised by an uncle who was in the painting business. While no harm may come of relator's release, the statute sets the standard of mental deficiency as the test for commitment and detention at Napanoch. All the medical testimony here is to the effect that relator is mentally deficient. The considerations which moved the Special Term cannot be allowed to outweigh the test fixed by statute. (*People ex rel. Cirrone* v. *Hoffmann*, 255 App. Div. 404; *People ex rel. Romano* v. *Thayer*, 229 id. 687; *People ex rel. Dambrosio* v. *McNeill*, 263 id. 748.) The order should be reversed upon the law and facts, without costs, the writ dismissed and relator remanded to the custody of the superintendent at Napanoch. Order reversed, upon the law and facts, without costs, and writ dismissed and relator remanded to the custody of the superintendent at Napanoch. Bliss and Schenck, JJ., concur; Foster, J., concurs, with a separate memorandum; Hill, P. J., and Heffernan, J., dissent, with a memorandum.

Foster, J. I concur in the result but upon somewhat different grounds. There is no evidence that relator is not a mental defective. A mentally defective delinquent, properly committed to the institution at Napanoch, may not be released except upon parole under the rules and regulations of the Commissioner of Cor-

rection. The determination as to whether such an inmate should be released on parole rests solely with the correction authorities and is a matter over which the courts have no jurisdiction. (Correction Law, §§ 445, 438.) Aside from the legality of the commitment, the only matter that may be determined upon habeas corpus is whether the inmate is a mental defective. (Mental Hyg. Law, § 204; Correction Law, § 446.)

HILL, P. J., and HEFFERNAN, J. (dissenting). Relator was convicted of petit larceny on a plea on December 6, 1938. He was adjudged a mental defective on the following day and committed to the institution. The evidence shows that the relator is not too strong mentally, being just under sixty per cent of the theoretical normal Simon-Benet man. He had an opportunity to be employed in a gainful occupation at a living wage. All of the mental experts except one agree that his liberation will not endanger the safety of himself or the public, and the one not so testifying was uncertain. " Mental defective " is a relative term concerning which expert theorists disagree. It is for the courts to determine the standard after listening to theorists.