The People of the State of New York ex rel. Charles Morriale, Appellant, against Vernon C. Branham, as Superintendent of Woodbourne Institution for Defective Delinquents, Respondent.

Submitted October 14, 1943; decided December 2, 1943.

*Caesar B. F. Barra* and *Ralph J. Barra* for appellant. Section 440 of the Correction Law is unconstitutional in that it operates to deprive a person of his liberty without due process of law. (*People ex rel. Romano* v. *Thayer*, 229 App. Div. 687; *People ex rel. Barone* v. *Fox*, 202 N. Y. 616; *People* v. *Henriques & Co.*, 267 N. Y. 398; *Stuart* v. *Palmer*, 74 N. Y. 183; *Twining* v. *New Jersey*, 211 U. S. 78; *People* v. *Dean*, 94 Misc. 502; *People ex · rel. Berger* v. *Warden of Workhouse*, 176 App. Div. 602; *Matter of Naylor*, 284 N. Y. 188; *People ex rel. Greenwell* v. *McNeill*, 262 App. Div. 912; *Matter of Lyons* v. *Goldstein*, 290 N. Y. 19.) The application herein was made without knowedge of the prisoner. No notice was given to him; nor was he produced in court or given an opportunity to defend himself. Without this necessary procedure the court acquired no jurisdiction over the prisoner and the order entered in the proceeding is void. (*People* v. *Dean*, 94 Misc. 502; *People ex rel. Barone* v. *Fox*, 202 N. Y. 616; *People ex rel. Bridgeport Sav. Bank* v. *Feitner*, 191 N. Y. 88; *Matter of Kenny*, 23 Misc. 9; *People* v. *Henriques & Co.*, 267 N. Y. 398; *Hovey* v. *Elliott*, 167 U. S. 409; *Twining* v. *New Jersey*, 211 U. S. 78; *People ex rel. Ordway* v. *St. Saviour's Sanitarium*, 34 App. Div. 363.) The fact that section 446 of the Correction Law provides for a hearing on the return of a writ of habeas corpus does not save the situation. (*People ex rel. Ordway* v. *St. Saviour's Sanitarium*, 34 App. Div. 363; *Wilson* v. *Standefer*, 184 U. S. 399; *Boynton Cab Co.* v. *Giese*, 237 Wis. 237; *Whitley* v. *Superior Court*, 113 P. 2d 449.) The purported order of re-commitment was not made in accordance with the provisions of section 440 of the Correction Law and the relator's further detention is therefore illegal. (*People* v. *Damron*, 212 N. Y. 256; *People* v. *Sutcliffe*, 255 App. Div. 299; *People ex rel. Doscher* v. *Sisson*, 222 N. Y. 387; *People ex rel. Lawton* v. *Snell*, 216 N. Y. 527.) The question of relator's mental defectiveness is not before the Court of Appeals, nor is the question of relator's previous commitment. (*Matter of Depue*, 185 N. Y.

60; *People ex rel. Patrick* v. *Frost,* 133 App. Div. 179; *People ex rel. Mumbulo* v. *Ormsby,* 136 Misc. 637; *People ex rel. Cockran* v. *Hyatt,* 172 N. Y. 176; *Dixon* v. *LaGuardia,* 277 N. Y. 84; *People* v. *Zambounis,* 251 N. Y. 94; *People* v. *Miceli,* 39 N. Y S. 2d 871; *People* v. *Randazzo,* 179 Misc. 127.)

*Nathaniel L. Goldstein, Attorney-General* (*Orrin G. Judd* and *A. W. Feinberg* of counsel), for respondent. Respondent was entitled to hold relator indefinitely. The relator being on parole from Napanoch and guilty of violation of parole, cannot be released on habeas corpus without proof that he is not a mental defective. (*People ex rel. Romano* v. *Thayer,* 229 App. Div. 687; *People ex rel. Gaudino* v. *Superintendent of Institution for Male Defective Delinquents,* 263 App. Div. 1042; *Buck* v. *Bell,* 274 U. S. 200; *Matter of Johnson* v. *Hoffman,* 148 Misc. 766; *People ex rel. Albert* v. *Pool,* 77 App. Div. 148; *People ex rel. Danziger* v. *P. E. House of Mercy,* 128 N. Y. 180.) No violation of constitutional rights is involved in retaining an alleged mental defective on an *ex parte* order until his sanity or normal mentality has been proved. (*Matter of Naylor,* 284 N. Y. 188; *Bryant* v. *Crossland,* 182 Ky. 556; *People ex rel. Werner* v. *Prendergast,* 206 N. Y. 405; *People ex rel. Gottschalk* v. *Brown,* 237 N. Y. 483; *Matter of Wall,* 107 U. S. 265; *People ex rel. Morrell* v. *Dold,* 189 N. Y. 546; *Sporza* v. *German Sav. Bank,* 192 N. Y. 8; *People ex rel. Woodbury* v. *Hendrick,* 215 N. Y. 339; *People ex rel. Edwards* v. *Superintendent of Bellevue and Allied Hospitals,* 235 N. Y. 398; *People ex rel. Peabody* v. *Chanler,* 133 App. Div. 159, 196 N. Y. 525; *People ex rel. Reisner* v. *N. Y. N. & C. Hospital,* 230 N. Y. 119; *Hurtado* v. *California,* 110 U. S. 516.) The order of retention was not invalid as premature.

LEHMAN, Ch. J. The relator, Charles Morriale, pleaded guilty to a charge of attempted robbery, third degree, and on April 5, 1935, was sentenced to Sing Sing prison for a term of six years. The relator admitted that he had previously been convicted of a felony. The court in sentencing the relator to Sing Sing prison recommended that he " receive hospital treatment for his mental condition ", but made no finding that he was a " mental defective."

The relator on April 24, 1935, was transferred from Sing Sing prison to the Institution for Male Defective Delinquents at Napanoch, New York, as a mental defective, (pursuant to Correction Law, § 439), and thereafter, on March 15, 1938, was transferred from Napanoch to the Woodbourne Institution for Defective Delinquents. His term of imprisonment expired on January 23, 1941. On January 10, 1941, a few days before the expiration of the relator's term of imprisonment, the respondent as Superintendent of Woodbourne Institution for Defective Delinquents presented to the County Judge of Sullivan County a petition for an order authorizing the relator's retention after the expiration of the relator's sentence, in accordance with the provisions of section 440 of the Correction Law. On January 18, 1941, the County Judge made an order adjudging the relator to be a mental defective and directing that he be committed to the Woodbourne Institution for Defective Delinquents, "there to be dealt with according to law."

No notice of the presentation of the petition was given to the relator, and he had no opportunity to challenge at that time the *ex parte* assertion and proof that he is a mental defective. In April, 1942, more than a year after the expiration of his term of imprisonment under the sentence imposed upon him as punishment for the criminal offense of which he was convicted, the validity of the order of retention, or recommitment, was challenged on the ground that no notice of the presentation of the petition was given to the relator, and that an order for his retention after the expiration of his sentence deprives him of his liberty without due process of law. The relator also claims that the order is invalid because it was made before the expiration of the relator's term of imprisonment. The relator's challenge was sustained at Special Term. The order sustaining the writ was reversed and the writ was dismissed by the Appellate Division, two justices dissenting.

Section 440 of the Correction Law provides that when the term of imprisonment of a prisoner confined in a state institution for defective delinquents " has expired, and, in the opinion of the superintendent thereof, such prisoner is a mental defective the superintendent shall apply to a judge of a court of record to cause an examination to be made of such person, by two qualified examiners    * * *." If the examiners desig-

nated by the court make a certificate that after personal examination they are satisfied that the prisoner is a mental defective, the superintendent "shall apply to a judge of a court of record for an order authorizing him to retain such prisoner at the institution, accompanying such application with such certificate of mental defect. Such judge, if satisfied that such prisoner is a mental defective, shall issue an order of retention, and such superintendent shall thereupon retain the prisoner at the institution until discharged as provided by law."

The statute does not expressly require that notice of an application for the retention of a prisoner after the expiration of his term shall be given to the prisoner. The statute does require that the judge shall issue an order of retention only "if satisfied" that such prisoner is a mental defective. There must be judicial consideration and decision. An *ex parte* judicial decision that a prisoner otherwise entitled to his liberty shall continue to be retained in custody until, at some future time, he may be discharged by his custodian or may secure his release by habeas corpus proceedings, would be contrary to the traditions of the common law and perhaps would constitute a violation of rights guaranteed by the Constitution. A statute which authorizes a judicial order or decree for a person's imprisonment or restraint must if possible be given a construction which will not offend constitutional guarantees of liberty or offend fundamental concepts of the common law. Unless the statute provides expressly or by necessary implication that an adjudication may be made without notice to the person whose detention or restraint is sought, we may reasonably find implicit in the statute a direction that the judicial decision and decree shall be made only in accordance with due process of law after notice and opportunity to be heard.

We are told that the Legislature has supplied appropriate safeguards for the rights of a prisoner in a State institution for defective delinquents who is retained in custody after the expiration of his sentence under an *ex parte* order of retention, when it authorized an inmate of such an institution to seek "delivery from custody" by habeas corpus proceedings in which "the fact of his mental defectiveness is material to the inquiry". (Correction Law, § 446.) No order of retention is required where a mental defective convicted of a criminal

offense is committed to a State institution for defective delinquents in accordance with section 438 for an indefinite term. In such case the commitment is based upon a judicial determination made after trial that the delinquent is a mental defective. Section 440 has no application in such case. That section applies only where a prisoner has been sentenced after trial to a term of imprisonment in a penal or correctional institution, and is thereafter transferred in accordance with section 438-a or 439, by an administrative order to an institution for defective delinquents *without any prior judicial finding of the fact of mental defectiveness.* The place where a prisoner sentenced to imprisonment shall be confined during the term of his imprisonment may, under the statute, be determined by an administrative officer without notice or hearing, and such determination does not violate any constitutional right of the prisoner. After the expiration of the term of the prisoner, his sentence no longer furnishes justification for retaining the prisoner in confinement. He must then be released, unless a judicial order for his retention conforming to the requirements of due process of law is made. Inquiry as to the '' fact of mental defectiveness '' should precede such an order if the order is based upon a finding that the prisoner is a mental defective. An inquiry held thereafter in proceedings brought by an inmate seeking '' delivery from custody '' can hardly supply a sufficient basis for a decision or order already made. The Legislature provided that a judge of a court of record '' if satisfied that such prisoner is a mental defective, shall issue an order of retention ''. By force of such an order, the prisoner might be confined in an institution for the remainder of his life unless thereafter discharged according to law. No statute has been called to our attention where the Legislature of any state has in clear terms authorized an order for the indefinite confinement of a person until released according to law, without a judicial determination made upon notice to such person or to friends or relatives who might protect his rights. Habeas corpus proceedings authorized by statute constitute an appropriate procedure by which an inmate seeking '' delivery from custody '' may litigate '' the fact of his mental defectiveness '' even though at some earlier time there may have been a judicial determination that he was a mental defective. We do not think that the Legisla-

ture intended, even if it had the power, that an inquiry in habeas corpus proceedings initiated by an inmate seeking delivery from custody should take the place of a hearing held upon notice to such inmate before the order was made under which the inmate might be held in custody for life.

The respondent maintains that even if we should hold that the order for the relator's retention, made pursuant to the provisions of section 440 of the Correction Law is invalid, the relator's retention in custody would be lawful, because no such order was required in his case. In his return to the writ of habeas corpus the respondent alleges: " 7. That the delinquency and criminal record of the said Charles Morriale, prior to his conviction on present charge, is as follows: ' 3/17/32, Kings County Court, Brooklyn, N. Y. Robbery 2nd degree; sent to Institution for Male Defective Delinquents, Napanoch, N. Y.; term Indefinite; sent to the Napanoch Institution 4/13/32, paroled 4/13/34.' '' It is now argued that since the relator violated his parole by committing the crime for which he was thereafter sentenced to imprisonment in Sing Sing for a term of six years, he should have been returned to Napanoch as a parole violator. It is conceded that if his parole had been revoked and he had been returned to Napanoch as a parole violator, no order for his retention in an institution for mental defectives would have been necessary. A mental defective committed in accordance with the provisions of section 438 to a State institution for defective delinquents may be held under that commitment until paroled by the superintendent of the institution, subject only to his right to seek delivery from custody by habeas corpus proceedings instituted in accordance with section 446 of the Correction Law. (See *People ex rel. Romano* v. *Thayer,* 229 App. Div. 687; *People ex rel Gaudino* v. *Superintendent of Institution for Male Defective Delinquents, Napanoch,* 263 App. Div. 1042.) That rule has, however, no application in this case, for the return shows that the relator, after he was paroled by the Superintendent of Napanoch Institution was not returned there as a parole violator, but was sentenced for a definite term and is held under that sentence. Since the sentence has expired and the order for the relator's retention is not valid, the relator is now held under a commitment which furnishes no justification for retaining him in custody

and he is entitled to an order sustaining the writ and directing the relator's discharge from custody without prejudice to a new proceeding, providing notice and opportunity to be heard upon the question of the relator's alleged mental defectiveness.

The order of the Appellate Division should be reversed and that of the Special Term affirmed, without costs. (See 291 N. Y. 826.)

LOUGHRAN, RIPPEY, LEWIS, CONWAY, DESMOND and THACHER, JJ., concur.

Ordered accordingly.