RALPH TROUTMAN, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 28135.)

Court of Claims, August 2, 1947.

450

*Ralph Troutman,* claimant in person.

*Nathaniel L. Goldstein, Attorney-General (Arthur W. Mattson* and *Edward R. Murphy* of counsel), for defendant.

LAMBIASE, J.   In 1932 claimant, under the name of George Conklin, was convicted of an attempt to commit burglary second degree, and was sentenced, as a second offender, to the New York State prison at Auburn, New York, for a term of seven years, six months, commencing April 6, 1932.   He was thereafter transferred to Great Meadow Prison and then to New York State prison at Attica, New York.   On October 25, 1935, while the claimant was thus serving his sentence at said Attica State Prison, he was, by order of the warden of said prison, transferred to the Dannemora State Hospital at Dannemora, New York.   Thereafter and on January 28, 1937, upon application of the superintendent of said State hospital an order was made by Honorable THOMAS F. CROAKE, County Judge of Clinton County, New York, adjudging claimant insane and committing him to the Dannemora State Hospital, an institution for the treatment of mental diseases.

While thus detained in said State hospital, in an attempt to obtain his freedom therefrom, claimant had allowed to him fourteen writs of habeas corpus, each of which was dismissed following a hearing.   On each of such hearings the release of claimant was opposed by the Dannemora State Hospital authorities upon the grounds, in substance, that he was mentally ill and was in need of continued treatment in the institution. Claimant was released March 16, 1944, following an adjudication that he was not insane.

Thereafter claimant filed this claim which contains among other things, the following allegations:

" 3. This claim is for damages sustained by the claimant by reason of the wrongful acts, acts of misfeasance, and acts of nonfeasance of the State of New York through and by its officers, agents, servants and employees, and particularly the then Superintendent of the Dannemora State Hospital at Dannemora, New York, and the medical staff of said hospital as follows:

A. * * *

B. * * *

C. That the claimant was negligently, wrongfully and illegally confined in the Dannemora State Hospital from October 26, 1935 continuously to March 16, 1944.

D. * * *

E. * * *

F. That the State of New York, through its officers, servants, agents, and employees was further negligent in detaining the claimant in the Dannemora State Hospital from October 26, 1935 to March 16, 1944 when it knew or in the exercise of reasonable care should have known that the claimant was not insane and was not the subject of confinement in a hospital for the insane.

G. That the State of New York was further negligent in failing to make a proper diagnosis of the claimant's mental condition and in making a diagnosis of insanity requiring confinement in a hospital for the insane.

H. That by reason of the negligence and the wrongful and illegal acts of the State of New York, through its agents, servants and employees in detaining the claimant at the Dannemora State Hospital and depriving him of his liberty, the claimant suffered and will suffer humiliation and mental anguish and the loss of earnings and was damaged in the sum of $150,000.00."

A previous claim for the same relief, being claim No. 27787, was by us dismissed without prejudice on December 19, 1945, and the instant claim was filed March 12, 1946, in typewritten form, permission for the filing of such claim in said form having been granted by us.

The State denies any liability herein, and maintains (a) that the detention of the claimant was at all times lawful and pursuant to law, and (b) that the claim of the claimant should be dismissed.

For the purposes of convenience and in the orderly consideration of this case, we are dividing the period of claimant's detention into two general categories, viz., (1) that prior to and up

to January 23 or 29, 1937 (both the said dates appearing on State's Exhibit A), being the date of expiration of claimant's commuted term, and (2) that subsequent to said date of expiration of claimant's commuted term and continuing up to the date of his discharge on March 16, 1944.

We consider first claimant's detention under subdivision (1) above: The transfer of claimant from Attica State Prison to Dannemora State Hospital was effected by an administrative order of the warden of said prison dated October 25, 1935, made pursuant to and in conformity with section 383 of the Correction Law of the State of New York. (*People ex rel. Morriale* v. *Branham,* 291 N. Y. 312, original decision adhered to on reargument 292 N. Y. 127.) The lawfulness of this transfer cannot be questioned, and such transfers have long been upheld. (*People ex rel. Russo* v. *Shaw,* 269 App. Div. 919; *People ex rel. Gardner* v. *Shaw,* 269 App. Div. 919.) Furthermore, the detention and retaining in confinement of claimant up until the date of the expiration of his commuted term was by virtue of the force and direction of and was justified by the original sentence meted out to him upon his conviction as hereinbefore set forth. (*People ex rel. Morriale* v. *Branham, supra.*) It has been said that two classes of persons are confined in Dannemora State Hospital: First, a class of convicts detained solely as prisoners, the only warrant for whose detention is the original certificate of conviction; and, second, a class of ex-convicts, detained as insane persons, solely under an order of commitment as such, granted by a court or judge at the conclusion of proceedings in lunacy. In the instant case up until the date of expiration of his commuted term, claimant belonged to the former class. During the term of his sentence he had been confined in one of several State institutions devoted to the purpose. His punishment was imprisonment. In the place of imprisonment he had no choice or say. The State names the place, and it may name for him, when pronounced insane, a hospital for the insane as well as it may name for another, when pronounced tubercular, a hospital for tubercular convicts. The placing of a convict, according as he may be classified as sick or well, dangerous or peaceful, sane or insane, is a detail of prison management. (*People ex rel. Stephani* v. *North,* 91 Misc. 616; *People ex rel. Morriale* v. *Branham, supra.*) We conclude, therefore, that claimant's detention for the period up to the expiration of his commuted term herein was lawful.

As to the period of detention under subdivision (2) above: Section 384 of the Correction Law of the State of New York now

provides and at all times herein mentioned provided in pertinent part: " When the term of a prisoner confined in Dannemora state hospital has expired, and, in the opinion of the superintendent, such prisoner continues insane, the superintendent shall apply to a judge of a court of record to cause an examination to be made of such person, by two legally qualified examiners, other than a physician connected with such hospital, qualified as provided in the mental hygiene law. Such examiners shall be designated by the judge to whom the application is made. Such examiners, if satisfied, after a personal examination, that such prisoner is insane, shall make a certificate to such effect in the form and manner prescribed by article five of the mental hygiene law, for the commitment of insane persons to state hospitals. Such superintendent shall apply to a judge of a court of record for an order authorizing him to retain such prisoner at the Dannemora state hospital, accompanying such application with such certificate in lunacy. Such judge, if satisfied that such prisoner continues insane, shall issue such order of retention, and such superintendent shall thereupon retain the prisoner at Dannemora state hospital until discharged as provided by law." Therefore, after the expiration of claimant's term of imprisonment his sentence no longer furnished justification for retaining him in confinement. He was then to be released unless a judicial order for his retention conforming to the requirement of due process of law was made. Consequently, the order of January 28, 1937, made by Judge CROAKE hereinbefore referred to was obtained. That order was based upon a petition presented by the Superintendent of the Dannemora State Hospital praying that claimant be adjudged " to be mentally sick and committing him to an institution for care and treatment of the mentally sick ". Attached to said petition was the certificate of two qualified examiners certifying to the fact that claimant was " mentally sick and was a proper subject for custody and treatment in some institution for mental diseases, as a mentally sick person under the provisions of the statute ". No personal service of notice of the application for such order was made upon claimant, service of the same having been dispensed with at said time by Judge CROAKE upon the grounds that it " would serve no useful purpose ".

None of the foregoing orders dismissing the writs hereinbefore mentioned was appealed except the one made January 25, 1943, in the Clinton County Court (RYAN, J.). Upon that appeal, the Appellate Division, Third Department, in its decision (*People ex rel. Conklin* v. *Webster,* 267 App. Div. 453, 455) said:

" He [referring to claimant] has a right to have the question of his sanity ' inquired into and determined ' (*People ex rel. Morriale* v. *Branham,* 291 N. Y. 312, original decision adhered to on reargument 292 N. Y. 127; Mental Hygiene Law, § 204; Civ. Prac. Act, § 1259. * * * Order dismissing writ reversed, on the law, and writ sustained, and relator discharged, without prejudice to a new proceeding on notice to relator to determine as to his sanity." Following the decision on said appeal, a petition was presented by the Superintendent of the Dannemora State Hospital to the County Court of Clinton County, New York, pursuant to section 384 of the Correction Law of the State of New York and in the form and manner prescribed by article 5 of the Mental Hygiene Law, which petition prayed for the retention of claimant in Dannemora State Hospital after the expiration of his full maximum term of imprisonment for which he had been committed to State prison. As a result thereof an order was made on March 14, 1944, by Honorable F. CLAUDE O'CONNELL, Clinton County Judge, and entered herein, which order contains among other things, the following recitals:

" And the Court having entertained said petition and thereupon appointed * * * and * * * , both qualified examiners * * * to examine said alleged mentally sick person and report their findings to this Court, and said examiners having completed said examination on this date and having given their testimony before this Court as to the present mental condition of said George Conklin, and having refused to sign a recommitment of said patient, and each having declared that in his opinion said George Conklin was not insane, and that it would not be either detrimental to the patient nor to the public to release him from custody at this time, * * * and the Court having determined that said George Conklin is not a mentally sick person and that he has completed serving his entire maximum term of imprisonment for which he was committed, it is

" Ordered that said GEORGE CONKLIN be and he hereby is discharged from the custody of the Superintendent of Dannemora State Hospital and that said Superintendent shall upon receipt of a certified copy of this order discharge said George Conklin forthwith."

The order of commitment herein made by Judge CROAKE was a " judicial determination " that claimant was insane as of the time it was made and constituted him thereby a ward of the State of New York. (*Sporza* v. *German Savings Bank,* 192

N. Y. 8, 20; *People ex rel. Reiblich* v. *Waldo,* 162 App. Div. 417; *Matter of Killeen,* 121 Misc. 482.) Said order of commitment, which was valid on its face, had not been directly attacked, vacated, modified, set aside, or reversed up to the time that claimant was released. Such was also the case, with the sole exception hereinbefore noted and discussed, with the several orders dismissing the various writs of habeas corpus allowed to the claimant from time to time. The original order of commitment as well as the various orders of dismissal hereinbefore referred to, whether right or wrong, were conclusive herein until set aside, modified or reversed. (*Crounse* v. *McVickar,* 207 N. Y. 213; *Matter of Killeen, supra; Bannon* v. *Bannon,* 270 N. Y. 484.)

In all cases where a court has acquired jurisdiction in an action or proceeding, its order made or judgment rendered therein is valid and enforcible and affords protection to all persons acting under it although it may be afterward set aside or reversed as erroneous. Errors committed by a court upon the hearing of an action or proceeding which it is authorized to hear, but not affecting any jurisdictional fact, do not invalidate its orders or authorize a party to treat them as void, but can be taken advantage of only by appeal on motion in the original action. (*Fischer* v. *Langbein,* 103 N. Y. 84, 90.)

It is a general rule, often declared, that a judgment or a decree of a court which has jurisdiction of a person and subject matter is binding until reversed and cannot be attacked collaterally. (*Knickerbocker T. Co.* v. *Oneonta, C. & R. S. Ry. Co.,* 201 N. Y. 379.)

The rule of law applicable to the instant case is set forth in American Law Reports (Vol. 145, pp. 730–731) as follows: "In actions for false imprisonment predicated upon the institution of, or conduct in connection with, lunacy proceedings, the courts have applied the rule, which governs actions for false imprisonment in general, that imprisonment which is authorized by process which is regular on its face and is issued by a court of competent jurisdiction is lawful, and cannot give rise to a cause of action for false imprisonment, even though the process was erroneously or improvidently issued. It protects those securing the order resulting in arrest or confinement, those who participated in the proceedings, and also those acting under the order or warrant."

Claimant contends that the effect of the order determining him not to be mentally sick and discharging him from the custody of the Superintendent of Dannemora State Hospital,

dated March 14, 1944, and made by Judge O'CONNELL upon the findings of two qualified examiners, was retroactive to the date of Judge CROAKE's order in 1937. This contention is untenable for an examination of Judge O'CONNELL's order discloses, among other things, the following recitals: "* * * and said examiners having completed said examination on this date and having given their testimony before this Court as to the *present* mental condition of said George Conklin * * *." (Emphasis supplied.) This order obviously had no retroactive effect. (*Hoff* v. *State of New York,* 279 N. Y. 490, 494; *Vona* v. *State of New York,* 54 N. Y. S. 2d 453; 145 A. L. R. 731, 732.) The State, therefore, under the circumstances herein, cannot be held to respond in damages for false imprisonment. (*Douglas* v. *State of New York,* 296 N. Y. 530.)

It was stipulated by the parties herein upon the instant trial of this claim that the stenographer's transcript of all the testimony in the previous trial of this claim held on December 18 and 19, 1945, at Rochester, New York, before us, which trial ended in a dismissal of the claim without prejudice, be admitted in the instant trial; and that all the testimony therein contained and all of the exhibits offered in evidence at the trial be deemed to have been admitted and received in evidence herein. It was further stipulated at said time that if the witnesses who were called and appeared on the previous trial had been called in the instant trial, their testimony would have been the same as that which they gave at the previous trial hereinbefore referred to. Claimant reserved at said time the right to challenge on this trial the legality of the various orders of the several judges whereby he was remanded to the custody of the Dannemora State Hospital.

Much of the evidence adduced by the claimant on said previous trial and in said record contained was admitted on the general issue of negligence alleged against the State of New York. We have considered this previous record in its entirety; and as bearing on the question of the alleged negligence of the State of New York, we have considered as being before us evidence taken under reservation.

We discuss no other alleged cause of action contained in the claim herein, however, for we are of the opinion that claimant has not established any cause of action against the State.

The motions made by the State for a dismissal of the claim herein, upon which decision was reserved by us, are hereby granted with an exception reserved to the claimant thereon.

The claim of the claimant must and hereby is dismissed upon the merits.