RALPH TROUTMAN, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 28135.)

Third Department, May 5, 1948.

*Ralph Troutman,* appellant in person.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General* and *Ruth Kessler Toch, Assistant Attorney-General* of counsel), for respondent.

FOSTER, J. Claimant has appealed from a judgment of the Court of Claims dismissing upon the merits a claim filed by

him against the State of New York. The essence of the claim was that claimant had been illegally detained and confined as an insane person in the Dannemora State Hospital.

On April 6, 1932, claimant was sentenced, upon a conviction of an attempt to commit burglary in the second degree, to a term of imprisonment for seven years and six months. He was first confined in the New York State Prison at Auburn. Later he was transferred to Great Meadow Prison and then to Attica Prison, and while at the latter institution, upon the certification of the prison psychiatrist, he was transferred to the Dannemora State Hospital. This was on October 25, 1935. His commuted sentence for the crime for which he was convicted would have expired in January, 1937. On January 28, 1937, on the application of the Superintendent of Dannemora State Hospital and after examination by two private physicians not associated with the hospital, he was committed as an insane person to the Dannemora State Hospital by order of the County Judge of Clinton County. The order of commitment recited that notice to the relator was not required because it would serve no useful purpose.

Thereafter, and between January 28, 1937, and December 21, 1943, claimant obtained fourteen writs of habeas corpus to obtain his release upon the ground that he was not insane. Each of these writs was dismissed. Finally he took an appeal to this court from an order of the Clinton County Court, entered January 25, 1943, dismissing a writ of habeas corpus. The order dismissing the writ was reversed on the law; the writ sustained, and the relator discharged without prejudice to a new proceeding on notice to determine the issue of his sanity (*People ex rel. Conklin* v. *Webster*, 267 App. Div. 453). After this decision and in a new proceeding before the County Court of Clinton County it was determined that claimant was not insane and his discharge from the custody of the Superintendent of the Dannemora State Hospital was directed.

The claim herein was dismissed in the Court of Claims chiefly upon the ground that when claimant was originally committed by the County Court of Clinton County to the Dannemora State Hospital the court had jurisdiction both of the subject matter and the person of claimant. We are unable to agree with this conclusion. Undoubtedly the court had jurisdiction of the subject matter in an abstract sense but it had no jurisdiction of the person of the claimant because no notice had been given to him. True it is that the section of the Correction Law under which claimant was committed by the County Court

contains no requirement for notice (Correction Law, § 384). But in construing a similar section of the Correction Law (§ 440) relating to retention of mental defectives after the expiration of their terms of imprisonment it was held that notice to a prisoner is required by implication. That is to say, that even though the statute does not expressly require that notice of the application for the retention of a prisoner after the expiration of his term shall be given to a prisoner, nevertheless he is entitled to such notice as a matter of due process (*People ex rel. Morriale* v. *Branham,* 291 N. Y. 312). By all the principles of analogy the rule stated in the case cited must apply also to section 384 of the Correction Law, and by the same process of reasoning it must be held that the order committing claimant as an insane person was void because no notice was given.

The opinion of the court below cites several cases to the effect that where a court has acquired jurisdiction in a case or proceeding its order or judgment therein affords protection to all persons acting under it although it may be afterward set aside or reversed as erroneous. But in those cases the court had jurisdiction which was lacking in the present case. Also the court below cites the general rule that a judgment of a court which has jurisdiction of a person and subject matter is binding until reversed and cannot be attacked collaterally. That is true of course, but where jurisdiction is lacking any judgment or order may be attacked collaterally or otherwise, and the person injured thereby is not required to have it vacated or reversed on appeal. No one, we think, would dispute the proposition that a judgment or order entered without notice of any kind is completely void for lack of jurisdiction and may be attacked in any manner that a party sees fit. (*German Savings Society* v. *Dormitzer,* 192 U. S. 125; *Ferguson* v. *Crawford,* 70 N. Y. 253; *O'Donoghue* v. *Boies,* 159 N. Y. 87; *Matter of Doey* v. *Howland Co.,* 224 N. Y. 30.) The cases cited deal mostly with property rights but certainly the rule would not be less embracive in a case involving personal liberty.

The circumstances of this claim are entirely different from those passed upon in *Douglas* v. *State of New York* (269 App. Div. 521). There it was held that a special surrogate had jurisdiction to make the commitment, and that the same being valid on its face did not subject the State and officers of a State hospital for the insane to an action for false imprisonment even if the order was erroneously and improvidently made. In this case,

we repeat, the order was not merely erroneous or improvident, it was made without any jurisdiction whatever; and lack of notice appeared upon the face of the order itself.

The fact that after the original commitment was made a series of writs of habeas corpus, procured on the application of the claimant, were dismissed by courts which undoubtedly had jurisdiction does not alter the fundamental lack of jurisdiction in the first instance, and affords no protection to those who participated in procuring the original commitment. Undoubtedly the issue of jurisdiction was not raised in the proceedings relative to such writs, and the only issue presented in each instance was the sanity of the claimant.

Under the circumstances we think it was improper to dismiss claimant's claim insofar as it related to his detention and confinement under the order of the County Court of Clinton County made on January 28, 1937, and that the judgment of dismissal should be reversed and a new trial granted. In so doing we are mindful of the fact that the order of the County Court of Clinton County, made on March 14, 1944, adjudging claimant to be sane and directing his release, related only to his condition at that time. Whether he was sane during any of the period between the date of his original commitment and the date of his release is a matter of proof concerning which we express no opinion.

HILL, P. J., HEFFERNAN and RUSSELL, JJ., concur with FOSTER, J.; DEYO, J., dissents, with the following memorandum: Unlike section 440 of the Correction Law, section 384 incorporates by reference and makes applicable article 5 of the Mental Hygiene Law. Thereunder and pursuant to section 74, subdivision 3, of the Mental Hygiene Law, notice to a person mentally ill may be dispensed with. The order of commitment of the Clinton County Court made January 28, 1937, was, therefore, properly granted without notice. The judgment of the Court of Claims should be affirmed.

Judgment reversed, on the law and facts, with costs and the claim remitted to the Court of Claims for a new trial.

The court reverses findings of fact in the decision below numbered 9, 18 and 19, and the conclusion of law numbered 3.