OPINION OF THE COURT
Donald J. Corbett, Jr., J.
Claimant brings this timely filed unassigned claim against the State of New York for having failed to release him from Attica Correctional Facility (Attica) upon his conditional release date. (Penal Law § 70.40 [1] [b].) Claimant contends, without significant dispute, that he remained incarcerated for some 42 days beyond the date upon which he should have been released.
In July 1978 claimant, while being represented by private counsel, was convicted by a jury in Niagara County Court of two counts of criminal possession of stolen property in the first degree and one count of criminal possession of stolen property in the third degree. On September 6,1978, he was sentenced to an indeterminate term of imprisonment of up to four years, and was immediately committed to the custody of the New York State *173 Department of Correctional Services. At that time he was credited with 44 days of jail time, pursuant to Correction Law § 600-a and Penal Law § 70.30 (3).
Claimant, now represented by the Niagara County Public Defender, prosecuted two appeals to the Appellate Division, Fourth Judicial Department. On February 22, 1979, claimant was released on bail pending the results of his appeals. Claimant testified that, while awaiting the results of his appeals, he traveled to Florida and remained there, keeping his attorney apprised of his whereabouts at all times.
On March 28,1980, the judgment from which the two appeals had been taken was unanimously affirmed by the Appellate Division, and finally, on April 28, 1980, claimant’s application for leave to appeal to the Court of Appeals was denied. In December 1980, while still free on bail, claimant learned that his appeals had been denied some eight months previous thereto. Claimant returned to Buffalo in April 1981.
On May 12, 1981, claimant contacted his attorney, the Niagara County Public Defender, and on May 14,1981, after consultation with counsel, claimant surrendered himself to custody at the Albion Correctional Facility (Albion). He was transferred to Attica during the following month.
The claim herein had its genesis upon claimant’s assertion that he was entitled to jail time credit for the period immediately after the affirmance of his convictions by the Appellate Division and his voluntary surrender to custody. This entitlement is based upon a failure to comply with the requirements of CPL 460.50 (5).[1] Claimant testified, without contradiction, that he had raised such question of entitlement with the deputy superintendent at Albion and with appropriate authorities at Attica, to no avail.
Ultimately, claimant, now represented by the Wyoming County-Attica Legal Aid Bureau, filed a motion for a writ of habeas corpus on March 23,1982, in Supreme Court, Wyoming County. In a memorandum decision and order dated June 22, 1982, the Honorable Joseph P. McCarthy, Acting Supreme Court Justice, granted claimant the relief sought, determining *174 that he should have been accorded jail time credit from May 28, 1980 until the date he surrendered at Albion, May 14, 1981, some 351 days.
Had those 351 days timely been accorded to claimant as jail time credit, his conditional release date would have been May 25,1982 (see, Penal Law § 70.40 [1] [b]). A certified copy of Judge McCarthy’s order was served upon the Attica Correctional Facility on July 1,1982. Upon processing of the papers, claimant was released on July 6, 1982, some 42 days after his readjusted conditional release date. In essence, claimant seeks damages for this 42-day period, as well as damages attributable to claimant’s loss of a timely opportunity to be considered for parole (Penal Law § 70.40 [1] [a]).
The narrow issue before the court is whether the State must answer in damages for the erroneous failure to accord jail time credit (Penal Law § 70.40 [1] [b]) to an inmate, released on bail, from the date his appeal was finally terminated to the date of his reincarceration.
It is clearly against public policy to incarcerate an individual for a period of time beyond that which is mandated or permitted by the Penal Law. In addition to the individual’s deprivation of freedom and excessive imprisonment, the risks attendant to life in a correctional facility can be harrowing.[2]
Claimant contends that the State knew or should have known of his entitlement to the jail time credit, based upon his prior assertions to the authorities, but in any event no later than the filing of his motion for a writ of habeas corpus. That filing, says claimant, put the State on notice. In Wood v State of New York (28 AD2d 643), that claimant was arrested on a mental hygiene commitment certificate which was valid on its face. When the claimant protested and denied that he had in fact been examined by the health officer who signed the certificate, the court found that, “A phone call or any casual investigation would have revealed this [falsity].” (Wood v State of New York, supra, p 643; see also, Plumadore v State of New York, 75 AD2d 691, 692.)
Of course, absent evidence to the contrary, representatives of the State of New York, whether at correctional facilities or State hospitals for the mentally ill, are entitled to rely upon an arrest *175 warrant valid on its face (Nastasi v State of New York, 275 App Div 524, 526), particularly where an order of commitment does not, of itself, give notice of its legal invalidity (Harty v State of New York, 29 AD2d 243, 245, affd 27 NY2d 698; Corcoran v State of New York, 30 AD2d 991; but see, Troutman v State of New York, 273 App Div 619).
There is no contention by claimant that the officials at Attica were relying upon an invalid or erroneous order of commitment. While claimant merely surrendered to the authorities voluntarily, and without lending any credence to the speculative musings of the State as to motive, claimant was under no obligation to do so, and, inasmuch as he surrendered in the absence of a notice pursuant to CPL 460.50 (5), no new order of commitment was issued.
The State affixes responsibility upon the Niagara County Sheriff and the Niagara County Court for their failure to comply with the relevant provisions of the Criminal Procedure Law, and urges that the court so find, despite a dearth of evidence that either had any knowledge of claimant’s surrender. Of course, had there been timely compliance with CPL 460.50 (5), there would be no claim to assert. Indeed, had claimant, rather than surrendering, merely done nothing, there probably would have been no reincarceration. The State’s reliance upon Middleton v State of New York (54 AD2d 450, affd 43 NY2d 678) is limited in that the Sheriff’s incorrect computation therein resulted from two different convictions in two counties. In the instant matter, the prison officials relied upon the only commitment papers they had, those of September 6, 1978, and claimant has not established a duty requiring the issuance of a supplemental or second such paper.
Claimant contends that the rule of Lesser v State of New York (27 AD2d 642) sets forth the two essential elements of a claim, that of an erroneous computation of prison time, and, as a consequence thereof, a detention and imprisonment by the State without lawful authority. The State opines that the erroneous computation of prison time was not determined until Judge McCarthy’s memorandum and order of June 22, 1982, and, despite claimant’s assertion that the State was on notice upon the filing of the motion for the writ of habeas corpus, the issue raised therein was not a settled matter of law, witness the reserved decision by that court. Although claimant was released from Attica on July 6, 1982, the State decided not to appeal Judge McCarthy’s decision only after the Appellate Division, *176 Fourth Judicial Department, on July 9, 1982, reversed a lower court ruling in Matter of Hooray v Cummings (89 AD2d 790).[3]
It is this reliance by the State, upon a contested legal matter which had not resolved the question in this jurisdiction, that allows it to escape liability today. Under the limited circumstances herein, the court finds that the State was justified in relying upon the original order of commitment until the writ of habeas corpus was granted (see, Nastasi v State of New York, supra, at p 526; Nuernberger v State of New York, 41 NY2d 111, 115; see also, Rossman v State of New York, 40 AD2d 1046). Clearly, the protection afforded the State as it awaited Judge McCarthy’s memorandum and order, pending the Appellate Division’s decision in Matter of Hooray v Cummings (supra), will not be available for similar claims arising thereafter. The court finds the minimal period between the serving of the writ and claimant’s ultimate release to be reasonable.
The failure of claimant to successfully establish a duty by defendant which was thereafter breached, is fatal to claimant’s position. If such a duty were found however, the issue of privileged confinement must then be considered. In an action for false imprisonment, a claimant must establish that: (1) the defendant intended to confine him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and (4) the confinement was not privileged. (Broughton v State of New York, 37 NY2d 451, 456, cert denied sub nom. Schanbarger v Kellogg, 423 US 929.) It is clear to the court that claimant’s confinement under a valid order of commitment was privileged (see, 2 NY PJI 28 [Supp]).
That part of the claim seeking damages from the State for its failure to afford claimant access to the New York State Board of Parole and thus an opportunity for parole, is too speculative. The granting of parole is discretionary, and indeed claimant has no guarantee that he will be considered for parole at any particular time (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 75).
To the extent that the order of commitment herein was valid on its face, it was properly relied upon until the grant of the writ *177 of habeas corpus and thus the State cannot be held answerable in damages. Accordingly, the instant claim is hereby dismissed.
All motions made at trial and not heretofore ruled upon are now denied.

. Pursuant to the statute, where defendant is free on bail, following an affirmance by an appellate court, “The criminal court must, upon at least two days notice to the defendant, his surety and his attorney, promptly direct the defendant to surrender himself to the criminal court in order that execution of the judgment be commenced or resumed, and if necessary the criminal court may issue a bench warrant to secure his appearance.”

. Claimant’s personal experience attests to these risks. During his incarceration claimant assisted the authorities in internal investigations at Attica, and after his participation was discovered, an attempt was made upon his life. Claimant would not have participated in such an investigation, if his date of release had been correctly calculated, as his release from Attica would then have been imminent.

. Notwithstanding the lower court decision in Matter of Hooray v Cummings (supra), the Appellate Division’s reversal thereof was consistent with previously unambiguous examinations of CPL 460.50 (5), albeit in the Appellate Division, Second Judicial Department (Matter of Holland v La Vallee, 63 AD2d 989, lv denied 45 NY2d 710; People v Healy, 76 AD2d 868).