Chief Judge Wachtler
(concurring). I agree with the majority that the evidence was insufficient to sustain defendant’s conviction under Penal Law § 240.25 (1), (see, majority opn, at 53-54). The same must be said, however, with respect to the charge that defendant committed harassment by using abusive or obscene language (Penal Law § 240.25 [2]). In case after case arising under Penal Law § 240.25 (2), we have held that the statute, despite its broad language, did not apply to language and gestures that can only be described as "abusive or obscene”, but which are nonetheless constitutionally protected (see, e.g., People v Bacon, 37 NY2d 830 ["go f_yourself’]; People v Sickles, 35 NY2d 792 [defendant gave "the finger”]; People v Burford, 34 NY2d 699 ["f_you”]; People v Pecorella, 32 NY2d 920 [defendant called police officer a "f_g liar”]; People v Shaheen, 32 NY2d 675 ["f_ you” and "son of a bitch”]; People v Collins, 31 NY2d 878 ["all you f_g cops are no good”]). The childish, but cruel statements uttered by defendant — calling complainant a "bitch” and her son a "dog” — can only be considered mild by comparison and fall well outside the scope of the statute as construed by this court for more than 15 years.
Ignoring these precedents, however, the majority holds that defendant’s words "clearly fall within the facial scope of the statute” (majority opn, at 51) and finds the statute not amenable to a limiting construction. Thus, the majority declares the statute invalid. Because I believe that we can and should save the statute, as we have done in the past, with an interpretation that would avoid the constitutional problems, I concur in result only.
It is an elementary maxim of constitutional decision making that "[n]o statute should be declared unconstitutional if by any reasonable construction it can be given a meaning in harmony with the fundamental law.” (People ex rel. Simpson v Wells, 181 NY 252, 257; see also, People v Liberta, 64 NY2d 152, 171, cert denied 471 US 1020; Matter of Second Report of *55 Nov., 1968 Grand Jury, 26 NY2d 200, 205-206; People v Epton, 19 NY2d 496, 505, cert denied and appeal dismissed 390 US 29; People v Finkelstein, 9 NY2d 342, 345, cert denied 371 US 863.) The majority excuses us from this obligation for two reasons: first, that an interpretation of the statute consistent with constitutional requirements cannot be found " 'reasonably * * * implicit’ in the words used by the Legislature” (majority opn, at 52); second, that such an interpretation would render the statute impermissibly vague (id., at 53). I cannot agree that these are serious concerns, or that they justify a facial assessment in this case.
The strong presumption of constitutionality enjoyed by an act of the Legislature rests in part on an appropriate measure of respect for a coordinate branch of government, including recognition that the judicial branch does not have a monopoly on constitutional values. Thus, "[i]t must be assumed that the Legislature intended to enact a statute which was in harmony with the United States Constitution and the Constitution of the State of New York” (People v Epton, supra, at 505). In addition, separation of powers principles and democratic ideals caution against wholesale nullification of the expressed will of the most representative branch. To the extent that such an expression does not transgress constitutional boundaries, it should be given effect (see, People v Liberta, supra, at 171).
From these principles springs our obligation to construe a statute, if possible, to save it from constitutional infirmities. The majority asserts, however, that no such construction is permissible unless the saving limitation is "one which the court 'may reasonably find implicit’ in the words used by the Legislature” (majority opn, at 52 [citing People ex rel. Morriale v Branham, 291 NY 312, 317]). In fact, the case cited stands for precisely the opposite proposition. We held in Morriale that, unless the statute provides expressly or by necessary implication that the constitutional requirements are absent, "we may reasonably find [such requirements] implicit in the statute” (People ex rel. Morriale v Branham, supra, at 317).
Thus, the proper approach is not, as the majority suggests, to adopt á saving construction only if the constitutional limitations are suggested by the statutory language. Instead, those limitations are deemed to be implicit in the statute unless the statutory language expressly negates such an implication. The latter, proper approach gives meaning to the presumption of *56 constitutionality of legislative acts and is in accord with principles of statutory construction that require us to read statutes in a manner that gives effect to the legislative purpose.
Here, for example, if we assume, as we must, that the Legislature intended to enact a constitutional provision, and acknowledge the expressed will of the Legislature to proscribe "abusive or obscene language” intended to "harass, annoy or alarm”, then an interpretation of the statute that would proscribe such language within constitutional limits would be most consistent with the legislative purpose. Certainly, such an interpretation is more consistent with the legislative purpose than is a decision to nullify the statute altogether.
Furthermore, it would require no "wholesale revision of the Legislature’s enactment” (majority opn, at 53) to accommodate the constitutional limitations. The statute’s requirement of an "intent to harass, annoy, or alarm” need only be equated with an intent to "inflict injury or tend naturally to evoke immediate violence or other breach of the peace”, to use the majority’s test for unprotected speech (majority opn, at 52). This is no great stretch. If we are to take seriously our obligation to construe a statute to avoid constitutional infirmities, then we must be willing to incorporate constitutional limitations into language that might have a broader scope if we were to rely only on "dictionary definitions” (cf., majority opn, at 51).
Indeed, in the past we have gone to greater lengths to defend a statute against a constitutional challenge. In People v Epton (supra, at 505-506), for example, despite definitive precedent from this court to the contrary (see, People v Gitlow, 234 NY 132, affd 268 US 652), we read into the criminal anarchy statutes a requirement that the defendant’s words and actions create a "clear and present danger”, thus reinterpreting the statutes to accommodate more recent First Amendment developments. Similarly, in Dollar Co. v Canadian Car & Foundry Co. (220 NY 270, 277-278), we were faced with a statute that, as previously construed by us, was clearly unconstitutional in light of subsequent holdings by the United States Supreme Court. We held that the obligation to construe the statute in accordance with the Constitution outweighed the principle of stare decisis and required us to reconstrue the statute accordingly (see also, Matter of Bell v Waterfront Commn., 20 NY2d 54, 62 ["Accordingly, as required by the First Amendment, we read the Waterfront Commission Act and construe the clause, 'knowingly or willingly advocates the desirability of over *57 throwing the government of the United States by force or violence,’ to proscribe only that type of advocacy (1) which is intended to indoctrinate or incite to action in furtherance of the defined doctrine and (2) which is accompanied by a 'clear and present danger’ of success.”]).
Thus, it cannot be a barrier to a limiting construction in this case that "the language of section 240.25 (2) [does not] suggest a limitation to violence-provoking or substantial injury-inflicting utterances.” (Majority opn, at 52-53.) The very purpose of construing a statute in accord with constitutional requirements is to supply limitations not overtly provided by the Legislature. Obviously, in Epton and Dollar, neither the statutory language nor the legislative history suggested the limitations imposed by the Constitution; the earlier cases established as much, but we nonetheless incorporated those limitations as they evolved. According to the majority’s formula, however, a limiting construction would only be available when the Legislature has already provided the limitations — i.e., when there is no need for it. Such reasoning creates much more than a limited exception to our duty to construe statutes in accord with constitutional limitations; it abrogates that duty entirely.
Nor would our incorporation of such limitations create a vagueness problem. The suggestion that it would, because "the statutory language would signify one thing but, as a matter of judicial decision, would stand for something entirely different” (majority opn, at 53) is no less than a suggestion that a limiting construction can never save a criminal statute in the First Amendment overbreadth context.
The majority’s concern appears to be that judicial decisions do not provide adequate notice to persons of ordinary intelligence and presumably that those persons would continue to be guided by the overbroad statute.
Assuming this to be true, it would not create a problem with the kind of notice that the vagueness doctrine addresses, that is, "fair warning that * * * contemplated conduct constitutes a crime.” (Bouie v City of Columbia, 378 US 347, 355.) The problem with the statute as written is not that it fails to provide fair warning that abusive or obscene language constitutes a crime, but that it fails to provide notice that some of such language does not and cannot constitute a crime because it is constitutionally protected. The statute provides too much notice, not too little; its defect remains overbreadth.
*58 To insist that such a "notice” problem would survive our limiting construction is simply to deny the efficacy of such a technique and to leave no room for its use in the future. The flaw in the majority’s analysis is its premise that judicial decisions stand apart from the statute. For purposes of over-breadth and vagueness analysis, however, our interpretation of the statute incorporating constitutionally mandated limitations "puts [those] words in the statute as definitely as if it had been so amended by the legislature.” (Winters v New York, 333 US 507, 514; see also, New York v Ferber, 458 US 747, 769, n 24; Wainwright v Stone, 414 US 21, 23; Dombrowski v Pfister, 380 US 479, 491, n 7.)
Furthermore, our citizens are chargeable with knowledge of our limiting constructions of statutes, even those occurring subsequent to the acts in question (Winters v New York, supra, at 514; People v Epton, supra, at 506; but cf., Bouie v City of Columbia, supra [defendants not chargeable with knowledge of subsequent expansion of statute]). Thus, the United States Supreme Court routinely addresses claims of statutory vagueness and overbreadth in terms of the statute as definitively glossed by the State courts (see, Wainwright v Stone, supra, at 22-23; Chaplinsky v New Hampshire, 315 US 568, 572-573; Monaghan, Overbreadth, 1981 Sup Ct Rev 1, 21-22; see generally, McGautha v California, 402 US 183, 258-260 [Brennan, J., dissenting], and cases cited).
Indeed, the Chaplinsky case by itself thoroughly answers the majority’s concerns. The New Hampshire statute at issue in that case was remarkably similar to Penal Law § 240.25 (2). It provided that " 'No person shall address any offensive, derisive or annoying word to any other person * * * with intent to deride, offend or annoy him’ ” (see, Chaplinsky v New Hampshire, supra, at 569). As the case came to the Supreme Court, however, the statute had been given a limiting construction by the New Hampshire Supreme Court so that it proscribed no words " 'except such as have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed.’ ” (Id., at 573.) Evaluating the statute in light of this construction, the United States Supreme Court found it neither overbroad nor unconstitutionally vague (id., at 573-574). Thus, what the majority claims is impossible to do in this case was accomplished by the New Hampshire Supreme Court and was given the approval of the United States Supreme Court in Chaplinsky.
While there may be some doubt as to whether the compara *59 tively mild epithets uttered in the Chaplinsky case would be considered "fighting words” today, the Supreme Court has reaffirmed both that States may constitutionally punish fighting words under narrowly drawn statutes and that the narrowing terms can be supplied by judicial construction (see, Gooding v Wilson, 405 US 518, 523). To the extent that the majority’s objection to a limiting construction rests on the notion that such a technique perforce creates vagueness problems, it runs directly counter to these precedents.
In theory, of course, the effort to cure overbreadth problems may create vagueness problems (Tribe, American Constitutional Law § 12-29 [2d ed]). If, for example, a court were to limit the reach of an overbroad statute by declaring that it is inapplicable to constitutionally protected conduct, without providing any standard for determining what is protected, the statute as construed would suffer from vagueness (id.). But such a failure reflects badly on the technician, not the technique. Engrafting a carefully defined "fighting words” limitation on Penal Law § 240.25 (2), as the New Hampshire court did with the statute in Chaplinsky, presents no such problems.
Nor does the successful invocation of the First Amendment overbreadth doctrine require nullification of the statute. True, that doctrine is uniquely associated with facial invalidation of statutes (see generally, Note, The First Amendment Over-breadth Doctrine, 83 Harv L Rev 844, 845-846, 852-858 [1970]), but that circumstance is largely attributable to principles of Federalism that have no application to State courts.
Because the Federal courts, including the Supreme Court, have no power to authoritatively construe State statutes, where a State statute comes before the Supreme Court broadly construed by the State courts, the Supreme Court is bound by that interpretation of State law and cannot substitute a saving construction (Schad v Mount Ephraim, 452 US 61, 65; Gooding v Wilson, supra). This fact, in my view, explains most of the Supreme Court’s findings of facial invalidity in the overbreadth context, as evidenced by the remedy imposed in such cases. The court does not, in the typical case, "strike down” the State statute in the sense of ordering its eradication from the books; instead, the court simply suspends its enforcement "until an acceptable limiting construction is obtained” (Dombrowski v Pfister, supra, at 497; see, id., at 491, n 7; Brockett v Spokane Arcades, 472 US 491, 503; Monaghan, Overbreadth, op. cit., at 2, n 7).
*60 Where, however, the Federal courts are reviewing Federal statutes, no such barrier exists and the courts routinely import constitutional limitations into the statutes to avoid both overbreadth and vagueness problems (see, e.g., Hamling v United States, 418 US 87 [Federal obscenity statute judicially restricted to comport with requirements of Miller v California, 413 US 15]; Buckley v Valeo, 424 US 1, 44, 76-80 [Federal Election Campaign Act narrowly construed to avoid First Amendment problems]). Thus, where Federal statutes and regulations are at issue in the Federal courts, there is little, if any, utility to the procedural component of the overbreadth doctrine — that which allows a facial challenge by one whose own conduct is not constitutionally protected (Monaghan, Overbreadth, op. cit, at 30). In such a case, there is simply no need to declare the statute facially invalid until a limiting construction can be obtained; the limiting construction can be rendered on the spot. The same is true, of course, when State statutes are reviewed in State courts.
Even when a State statute is involved in Federal court, facial invalidation (that is, suspension of enforcement pending proper limitation) is improper if the parties challenging the statute are ones who have engaged in, or desire to engage in, protected activity that the statute purports to punish (Brockett v Spokane Arcades, supra, at 504). In such a case, there is "no want of a proper party to challenge the statute, no concern that an attack on the statute will be unduly delayed or protected speech discouraged. The statute may forthwith be declared invalid to the extent that it reaches too far, but otherwise left intact.” (Id.)
Thus, facial invalidation is only compelled by the over-breadth doctrine when the statute is successfully challenged by one whose own activity is unprotected (and who would not therefore benefit from a limiting construction) and when the reviewing court lacks authority to narrow the scope of the statute to constitutional limits. Neither circumstance is present here.
Accordingly, neither the overbreadth doctrine itself nor the majority’s concerns about vagueness foreclose us from trimming the statute to its constitutional limits. Whether the statute should be voided in its entirety or saved by a limiting construction is thus governed by ordinary principles of severance (see, Brockett v Spokane Arcades, supra, at 506). The answer does not depend on whether the valid and invalid *61 applications of the statute spring from separate words, sentences or paragraphs; instead, " '[t]he question is in every case whether the Legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether’ ” (People v Mancuso, 255 NY 463, 474; People v Liberta, 64 NY2d 152, 171, supra). There is little doubt in my mind that, given a choice between proscribing only fighting words or. none at all, the Legislature would have chosen the former.
For all of these reasons, the proper course for us to follow in this case is to give section 240.25 (2) a clear and definitive construction limiting its reach to constitutionally prescribable fighting words.
I cannot agree that it is necessary to declare section 240.25 (2) unconstitutional. Accordingly, I concur in result only.
Judges Simons, Kaye, Alexander and Titone concur with Judge Hancock, Jr.; Chief Judge Wachtler concurs in result only in a separate opinion in which Judge Bellacosa concurs.
Order reversed, etc.